137 So.2d 298

**DIXIE DRIVE IT YOURSELF SYSTEM NEW ORLEANS CO., Inc.**

v.

**AMERICAN BEVERAGE COMPANY and Northern Insurance Company of New York.**

No. 45687.

Supreme Court of Louisiana.

Jan. 15, 1962.

Rehearing Denied Feb. 19, 1962.

David C. Treen of Beard, Blue, Schmitt & Treen, New Orleans, for plaintiff-appellant.

Dufour, St. Paul, Levy & Marx, Leonard B. Levy, William M. Lucas, Jr., New Orleans, for defendants-appellees.

SANDERS, Justice.

This is a tort action. The plaintiff, Dixie Drive It Yourself System New Orleans Co., Inc., seeks to recover from the defendants,

American Beverage Company and its insurer, Northern Insurance Company of New York, the sum of $2,665.49 for property damage to an International stake-body truck and the loss of income sustained by its withdrawal from use.

In the operation of its business, Dixie leased the truck to Gulf States Screw Products Company. On June 3, 1957, an employee of Gulf, Paul Langtre, was operating it in a southerly direction toward New Orleans on U. S. Highway 61 (the Airline Highway). At about 12:45 p. m. he collided with an R C Cola beverage truck (a tractor-trailer type) owned by the defendant, American Beverage Company, and driven by its employee, which was stopped on the highway about three miles north of Kenner.

The highway at this point embraces two roadways divided by a neutral ground. The roadway on each side of the neutral ground consists of two twelve-foot traffic lanes. The shoulders on each side of the highway are fifteen feet wide.

It had been raining heavily prior to the collision, and the highway was wet. At the time of the accident, it was drizzling or misting.

Before the collision the R C Cola truck was also proceeding in the direction of New Orleans. A coil wire to the distributor became disconnected and killed the motor. The driver brought the vehicle to a stop in the right-hand traffic lane, leaving a clearance of less than fifteen feet in the left lane. It remained in this position from eight to

ten minutes prior to the collision. The driver did not display signal flags on the highway or take any other action to protect approaching traffic.

Langtre, the driver of the Dixie truck, was proceeding in the right-hand lane at a speed of about forty-five miles per hour. His windshield wiper was operating, and his headlights were on. Langtre testified that he was following an unidentified truck which moved into the left lane and passed the R C Cola truck. Two other witnesses did not recall seeing the unidentified truck.

Langtre estimated that he first observed the R C Cola truck at a distance of about a quarter of a block, or about 200 feet. At that time it appeared to him to be moving. When he reached a point estimated by him to be eighty-five feet away, he perceived that it was stationary. He immediately started pulling into the left lane to pass, but was prevented from doing so by an overtaking automobile operated by Dr. Frank B. Wheeler in the left traffic lane at a speed of fifty-five or sixty miles per hour. Langtre applied his brakes, but was unable to avoid colliding with the rear end of the R C Cola truck. Dr. Wheeler, who perceived that the R C Cola truck was stopped at approximately the same time as Langtre, likewise applied his brakes. His automobile crossed the highway and came to rest on the left side of the road.

For recovery the plaintiff relies principally upon the following complaints of

negligence against the driver of the obstructing R C Cola truck:

1. Stopping and parking the truck upon the main travelled portion of the highway and leaving less than fifteen feet of the highway unobstructed in violation of LSA–R.S. 32:241.[1]

2. Failing to display signal flags or other warning devices on the highway at a distance of one hundred feet behind and in front of the truck to protect approaching traffic as required by LSA–R.S. 32:442.[2]

3. Taking no action to warn approaching traffic of the stalled vehicle.

The defendants denied that the driver of the R C Cola truck was guilty of any negligence and assert that the sole cause of the accident was the negligence of the driver of the Dixie truck (who is not a party to the suit) in driving at an excessive rate of speed under the prevailing conditions, in failing to keep a proper lookout, and in failing to have his truck under sufficient control to avoid the accident. In the alternative, the defendants contend that the negligence of Langtre is imputable to plaintiff and plead contributory negligence.

The district court rejected the demands of plaintiff. On appeal the Court of Appeal affirmed the judgment.

[1]. LSA–R.S. 32:241: "A. No person shall park any vehicle, attended or unattended, upon the main traveled portion of any highway, outside of a business or residence district, when it is practicable to park it off the main traveled portion of the highway. In no event shall any person park a vehicle, attended or unattended, upon a highway unless an unobstructed width of not less than fifteen feet upon the main traveled portion of the highway opposite such parked vehicle is left free for passage of other vehicles, nor unless a clear view of such vehicle exists from a distance of at least two hundred feet in each direction upon the highway. Even then, if such vehicle is left parked, attended or unattended, one half hour after sunset or one half hour before sunrise, the person parking it shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence.

"Whenever any police or traffic officer finds a vehicle parked upon a highway in violation of this Section, he is authorized to move it, have it moved, or to require the person in charge of such vehicle to move it to a position permitted under this Section.

"B. The provisions of this rule shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. *However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic.*" (Italics ours.)

[2]. LSA–R.S. 32:442: "Between one-half hour after sunrise, and one-half hour before sunset, motor busses, cars for hire having a capacity of over seven passengers, cars or trucks used as wreckers or for towing purposes, motor trucks and combinations thereof, *shall be equipped with two red flags, one to be placed one hundred feet behind and the other one hundred feet ahead of said parked vehicles and in such position as to be visible to all approaching traffic during the daylight hours.*" (Italics ours.)

The Court of Appeal found that the driver of the obstructing R C Cola truck was negligent in failing to place signal flags behind and in front of the truck as required by LSA–R.S. 32:442 and, for purposes of the decision, in stopping the truck on the main travelled portion of the highway and leaving less than fifteen feet clearance in violation of LSA–R.S. 32:241(A). The court held, however, that the negligence of the driver in these respects was not a proximate cause of the collision. See La.App., 128 So.2d 841.

We granted certiorari to review this judgment.

The principal question presented for decision is whether the driver of the obstructing truck was guilty of negligence and, if so, whether that negligence was a legal cause of the collision.

■ Preliminarily, we consider the contention that the alleged negligence of the driver of the Dixie truck is imputable to the plaintiff. For this determination it is of importance that the plaintiff had leased the truck to Gulf States Screw Products Company. The vehicle was under the exclusive control of Gulf and was operated by its employee. The relationship between plaintiff and Gulf was one of bailment.

■■ It is well established that the negligence of a bailee cannot be imputed to the bailor.[3] It follows that the defendants are liable if the driver of the obstructing R C Cola truck was negligent and that negligence was a legal cause of the collision. When the actionable negligence of two tort feasors contributes in causing harm to a third party, each of them is responsible for the damage. They are solidarily liable.[4]

The Louisiana Highway Regulatory Act imposes upon the driver of a vehicle disabled on the highway a "responsibility to protect traffic",[5] and during the daytime he is required to place a red signal flag one hundred feet behind and in front of the vehicle "in such position as to be visible to all approaching traffic." [6]

■■ The evidence in the instant case discloses that the driver of the R C Cola truck stopped it squarely in the lane of traffic. He had a companion in the truck with him. Inasmuch as eight to ten minutes

3. A. C. Service, Inc. v. Porter, La.App., 73 So.2d 600; Smith v. Litton, La.App., 47 So.2d 411; Sewell v. Newton, La.App., 152 So. 389; U-Drive-It-Car Co. v. Texas Pipe Line Co., 14 La.App. 524, 129 So. 565; Blashfield Encyclopedia of Automobile Law, Vol. 4, § 2493, p. 670; 65 C.J.S. Negligence § 161(b), p. 804.

4. Shield v. F. Johnson & Son Co., 132 La. 773, 61 So. 787, 47 L.R.A.,N.S., 1080;

Cunningham v. Penn Bridge Co., 131 La. 196, 59 So. 119; Falgout v. Younger, La.App., 192 So. 706; Lofton v. Cottingham, La.App., 172 So. 377. Cf. Cordiner v. Los Angeles Traction Co., 5 Cal.App. 400, 91 P. 436.

5. LSA–R.S. 32:241(B), supra (footnote 1).

6. LSA–R.S. 32:442, supra (footnote 2).

elapsed prior to the collision, the driver had ample time to take precautions.[7] Despite this, he did not position the signal flags, warn approaching drivers, or take any action to discharge his responsibility to protect traffic. He remained in the truck. We conclude that the driver violated the statute by failing to display the red signal flags and to reasonably discharge his responsibility to protect traffic.

The statute was designed to protect life and property on the highways. It is a safety measure. The violation of its provisions is negligence *per se,* and this negligence is actionable if it was a legal cause of the collision.[8]

There is no universal formula for the determination of legal cause. In the instant case it bifurcates into two distinct inquiries: whether the negligence of the obstructing driver was a cause-in-fact of the collision; and whether the defendants should be re-lieved of liability because of the intervening negligence of the driver of the Dixie truck.

It is clear that more than one legally responsible cause can, and frequently does, contribute to a vehicular collision.[9]

Negligent conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm.[10] Under the circumstances of this case, the negligent conduct is undoubtedly a substantial factor in bringing about the collision if the collision would not have occurred without it.[11] A cause-in-fact is a necessary antecedent. If the collision would have occurred irrespective of the negligence of the driver of the R C Cola truck, then his negligence was not a substantial factor or cause-in-fact. The question is not free from difficulty. A brief review of the circumstances surrounding the accident is essential. For the purpose of this review we accept the finding of the district court that

7. See Ledoux v. Beyt, La.App., 35 So.2d 472; Bornemann v. Lusha, 221 Wis. 359, 266 N.W. 789; 2A Blashfield, Cyclopedia of Automobile Law and Practice, § 1204, pp. 68–70.
8. D & D Planting Co. v. Employers Casualty Company, 240 La. 684, 124 So. 2d 908; Brown v. S. A. Bourg & Sons, Inc., 239 La. 473, 118 So.2d 891; Hollabaugh-Seale Funeral Home, Inc. v. Standard Accident Ins. Co., 215 La. 545, 41 So.2d 212; Ardoin v. Williams, La. App., 108 So.2d 817; Musgrave v. Githens, 80 Ariz. 188, 294 P.2d 674; 13 Tulane Law Review 297; 22 Tulane Law Review, 522, 524.
9. See Brown v. S. A. Bourg & Sons, Inc., 239 La. 473, 118 So.2d 891; Nicolle v. Roberts, La.App., 117 So.2d 622; Russo v. Aucoin, La.App., 7 So.2d 744.
10. Harvey v. Great American Indemnity Company, La.App., 110 So.2d 595; Restatement of Torts, Negligence, § 431; Prosser, Law of Torts (2nd Ed. 1955), § 44, p. 218.
11. D & D Planting Co. v. Employers Casualty Company, 240 La. 684, 124 So.2d 908; Leonard v. Holmes & Barnes, Limited, 232 La. 229, 94 So.2d 241; Shalley v. New Orleans Public Service, 159 La. 519, 105 So. 606; Arnold v. Griffith, La.App., 192 So. 761; Prosser, Law of Torts (2nd Ed. 1955), § 44, pp. 219–220; Harper and James, The Law of Torts (1956), § 20.2, p. 1110; Restatement Law of Torts, Negligence, § 432.

there was no intervening truck preceding the Dixie truck prior to the collision. This circumstance is not crucial to the decision.

The evidence discloses that the weather was rainy, and the highway was wet. It was drizzling or misting at the time. Langtre, the driver of the Dixie truck, was using his windshield wiper. He was also driving with his lights on.

Although he had seen the R C Cola truck a moment earlier, he did not perceive that it was stationary until he was rather close to it. He estimated the distance at eighty-five feet. Dr. Wheeler, the other overtaking driver, observed that the truck was stopped at approximately the same time.

Upon first observing that the truck was stationary, Langtre commenced moving into the left lane of traffic to pass the truck. The overtaking automobile of Dr. Wheeler, approaching from the rear in the left lane, thwarted this maneuver and trapped the Dixie truck in the right lane behind the stalled truck. Langtre applied his brakes immediately, but was unable to avoid striking the truck.

Dr. Wheeler, who is conceded to be a disinterested witness, described the critical moment as follows:

"Q. What truck did you say you saw?

"A. It was a truck and trailer, an R C Cola truck stopped in the right lane and apparently when me and the driver of the stake body truck evidently realized that the truck was stopped, we both realized that the truck was stopped, we both realized it approximately, I would say, at the same time because he applied his brakes and I did too, and evidently, from the way I saw it, the man was going to pull into us. I think I would have done the same thing if I were in his place.

"Q. What do you mean by that?

"A. The stake body truck began to pull out to miss the trailer truck and realized that I was there, and we both applied our brakes. I pulled over to compensate his pulling over and I hit the neutral ground and went across the neutral ground, across to the other side of the other lane and came to a stop by the side of this drainage ditch. My vehicle hit two trees sideways and didn't go into it.

\*       \*       \*       \*       \*       \*

"Q. You say his vehicle moved back toward the right-hand lane?

"A. He apparently began to move toward my side and pulled back. The brakes were applied. I saw then that he was going to hit the R C Cola truck because we were too close to actually stop.

"Q. Why were you attempting to pass him with the parked vehicle in his lane?

"A. Well, as I said, when I realized that the vehicle was stopped in his lane,

it was too late to make any corrective moves.

"Q. Were there any lights, or flares, or warning devices, or reflective devices of any kind in the highway along the parked truck?

"A. I don't recall any.

\* \* \* \* \* \*

"Q. Can you estimate the distance that you were from the parked beverage truck when you realized it was stopped?

"A. I'm a very poor judge of distance. I would think perhaps a hundred to 150 feet, but I do qualify that by saying I'm a very poor judge of distance. When I realized it, I knew that this truck couldn't possibly stop and neither could I, to avoid the accident."

Considering the maneuver to the left and the normal reaction time to apply the brakes, we can safely conclude that the estimate of eighty-five feet as the intervening distance at the moment Langtre first noticed the R C Cola truck was stopped is somewhat too short.[12] That it was drizzling or misting and that the truck was stopped in a "driving position" in the traffic lane constitute a combination of circumstances which doubtless reduced perception to some extent, particularly as to vehicular movement. Nonetheless, the record fully supports the finding of both the district court

and the Court of Appeal that the driver of the Dixie truck was negligent in that he:

"\* \* \* failed to see \* \*· \* [the obstructing truck], and failed to realize it was stopped on the highway, in time to avoid the collision."

We adopt this finding of fact.

■ The display of the signal flags at a specified distance from the vehicle is designed not only to warn of the presence of a vehicle on the highway, but also to give notice to all approaching traffic that the vehicle is stationary.[13] A stationary vehicle and a moving one require different driving actions by an overtaking motorist. A momentary delay in the recognition that a vehicle is stationary may create a dangerous traffic situation. The signal is designed to arrest the attention of all approaching drivers—even an inattentive one.

■ The display of the red signal flag one hundred feet behind the R C Cola truck would have served as an advance warning to both the driver of the Dixie truck and Dr. Wheeler that a stationary vehicle was ahead. Furthermore, the discharge of the driver's responsibility to protect traffic would have of necessity included a hand or other signal at a reasonable distance from the truck, a clear warning of the stationary vehicle. If either or both of the approach-

---

12. See Motor Vehicle Chart, 9C Blashfield, Cyclopedia of Automobile Law and Practice, § 6237, p. 413.

13. See Gies v. Consolidated Freightways, 40 Wash.2d 488, 244 P.2d 248; Mitchell v. Rogers, 37 Wash.2d 630, 225 P.2d 1074.

ing drivers had seen the flag or signal, the accident would have been averted. We can reasonably infer that the collision would not have occurred if the statutory precautions to protect approaching traffic had been taken. The mere possibility that the accident would have occurred despite the required precautions does not break the chain of causation.[14]

We conclude that the negligence of the obstructing driver was a substantial factor in bringing about the collision, or a cause-in-fact.

The inquiry as to whether a defendant should be relieved of liability because of the intervening negligence of another is frequently couched in terms of proximate cause. In the instant case the Court of Appeal concluded that the defendants should be relieved of liability based upon the following statement of law:

"Whatever negligence may have been involved on the part of the driver of the defendant vehicle had become passive and too remote to be a contributing cause of the accident. The sole proximate cause thereof was the negligence of the driver of the plaintiff truck. The defendant is not liable because the negligence of its employee-driver was not a proximate cause of the accident."

The thrust of this formulation of law is toward relieving all but the last wrongdoer of liability to an innocent victim in torts involving intervening negligence. This restrictive doctrine finds little support in legal theory.[15] We do not subscribe to the formulation as applied in this case.

The essence of the present inquiry is whether the risk and harm encountered by the plaintiff fall within the scope of protection of the statute. It is a hazard problem. Specifically, it involves a determination of whether the statutory duty of displaying signal flags and responsibility for protecting traffic were designed, at least in part, to afford protection to the class of claimants of which plaintiff is a member from the hazard of confused or inattentive drivers colliding with stationary vehicles on the highway.[16]

In Maggiore v. Laundry & Dry Cleaning Service, Inc., La.App., 150 So. 394, the Court of Appeal, with Judge Janvier as

14. Brantley v. Tremont & Gulf Railway Co., 226 La. 176, 75 So.2d 236; Reynolds v. Texas & P. Ry. Co., 37 La.Ann. 694; Ominsky v. Charles Weinhagen & Co., 113 Minn. 422, 129 N.W. 845; Cornbrooks v. Terminal Barber Shops, Inc., 282 N.Y. 217, 26 N.E.2d 25; Gates v. Boston & M. R. R., 255 Mass. 297, 151 N.E. 320; Vigneault v. Dr. Hewson Dental Co., 300 Mass. 223, 15 N.E.2d 185, 129 A.L.R. 95; State of Maryland for Use of

Pumphrey v. Manor Real Estate & Trust Co., 4 Cir., 176 F.2d 414; Phelps v. Woodward Const. Co., 66 Wyo. 33, 204 P.2d 179; Restatement of Torts, Negligence, § 432, Comment C; Prosser, Law of Torts (2nd Ed. 1955) § 44, pp. 222–223.

15. See 2 Harper and James, The Law of Torts, § 20.6, pp. 1156–1158.

16. See Alexander v. Standard Oil Co. of Louisiana, 140 La. 54, 72 So. 806; Lopes

its organ, defined the scope of protection of the traffic ordinance violated and imposed liability on the violator with the following analysis:

"We cannot avoid the conclusion that there was what may be called primary or initial negligence on the part of defendant's driver. Section 14, article III, of the traffic ordinance was inserted so that such accidents might be made practically impossible. The possibility of such unexpected dangers was in the contemplation of the framers of the ordinance. They realized that the mere application of the brake and the mere cutting off of power might render the possibility of such an accident very remote, but that, nevertheless, there would remain the possibility, so long as the starting key should remain in its place in the vehicle, and they, therefore, required that the key be withdrawn. It cannot be said that there was no causal connection between the fact that the key was left in place and the fact that later the motor started. A violation of a statute enacted for the safety of life

v. Sahuque, 114 La. 1004, 1005, 38 So. 810; Cutrer v. Southdown Sugars, La. App., 42 So.2d 314; Maggiore v. Laundry & Dry Cleaning Service, La.App., 150 So. 394; Langlois v. Rees, 10 Utah 2d 272, 351 P.2d 638; Butts v. Ward, 227 Wis. 387, 279 N.W. 6, 116 A.L.R. 1441; Werkman v. Howard Zink Corp., 97 Cal.App.2d 418, 218 P.2d 43; 38 Am. Jur., Negligence, § 167, p. 841; Prosser

or limb necessarily has the relationship of cause to effect where the final effect is such as could not have occurred had the statute not been violated."

In Butts v. Ward, 227 Wis. 387, 279 N.W. 6, 116 A.L.R. 1441, the court, in discussing the scope of protection of a traffic statute, stated:

" * * * Whenever the Legislature enacts a safety statute, it declares that injury from violation of it is reasonably to be anticipated. The Legislature establishes the standard of care to be exercised and liability for injury resulting from violation of the standard follows."

In 38 Am.Jur., Negligence, § 167, p. 841, the rule is succinctly stated as follows:

" * * * The general principle is that the violation of a statute or ordinance is not rendered remote as the cause of an injury by the intervention of another agency if the occurrence of the accident, in the manner in which it happened, was the very thing which the statute or ordinance was intended to prevent."

on Torts (2nd Ed.1955) § 34, pp. 154–158, § 49, pp. 267 268; 2 Harper and James, The Law of Torts, § 17.6, pp. 1003–1004, 1012; Green, Rationale of Proximate Cause (1927), pp. 142–144; Restatement of Torts, Negligence, § 286, p. 752 et seq.; 16 Louisiana Law Review 391, 394–396; 28 Texas Law Review 764–765; 27 Harvard Law Review 317.

In a scholarly article entitled "Proximate Cause in Louisiana" by Jesse D. McDonald, 16 Louisiana Law Review 391, the principle is stated as follows:

"* * * Since the law never gives absolute protection to any interest, recovery will be allowed only if the rule of law on which plaintiff relies includes within its limits protection against the particular risk that plaintiff's interests encountered. *This determination of the particular risks to plaintiff that fall within the ambit of protection of the rule of law on which plaintiff relies is the determination of the issue of proximate cause.*

*       *       *       *       *       *

"The presence of causes intervening subsequent to defendant's act which brings about injury presents no special problem. In such cases, the inquiry of the court is simply whether the risk produced by the *combination* of defendant's act and the intervening cause is one which is within the scope of protection of the rule of law upon which plaintiff relies."

To the same effect see Green, Rationale of Proximate Cause, pp. 142–144.

The inattention or confusion of motor vehicle drivers is not a highly extraordinary occurrence. The objective of the statutory provisions violated in the instant case was to protect against the likelihood that an oncoming motorist, whether cautious, confused or inattentive, would fail to timely perceive the vehicle or that it was stationary and become involved in an accident. The law was designed to protect the plaintiff (and any member of its class) against such an accident as occurred in this case. To deny recovery because of the plaintiff's exposure to the risk from which it was the purpose of the law to protect him would nullify the statutory duty and render its protection meaningless. The negligence of the driver of the Dixie truck was responsive to that of the driver of the R C Cola truck. It was dependent upon it. The negligence of the two combined to bring about harm to the plaintiff.

Law and reason support a conclusion that the defendants should not be relieved of liability.[17]

In Malone v. Hughes, La.App., 65 So.2d 665, the plaintiff was a guest passenger in an approaching vehicle which collided with a parked automobile. The evidence showed that the parked vehicle was visible for

17. Malone v. Hughes, La.App., 65 So.2d 665: Falgout v. Younger, La.App., 192 So. 706. Cf. United States Fidelity and Guaranty Co. v. Powell, La.App., 131 So. 2d 168; Blanks v. Saenger Theatres, 19 La.App. 305, 138 So. 883; Stumpf v. Baronne Building, 16 La.App. 702, 135 So. 100; Keiper v. Pacific Gas & Electric Co., 36 Cal.App. 362, 172 P. 180; Mitchell v. Rogers, 37 Wash.2d 630, 225 P.2d 1074; 131 A.L.R. 562, 605; Eldredge. Culpable Intervention as a Superseding Cause, 86 Pennsylvania Law Review 121.

some 500 feet. The roadway was gravel and the evidence indicated that the approaching vehicle, in which the plaintiff was a passenger, applied its brakes about 140 feet from defendant's automobile, but that this failed to bring the auto to a stop and its right front collided with the left rear of defendant's automobile. Among other things, the defendant, Hughes, contended that the proximate cause of the accident was the failure of plaintiff's host in not observing the situation in time to avoid the collision. The court found for plaintiff, however, saying:

"We are of the opinion that both Hughes and Malone were guilty of negligence, and that it was their combined negligence that caused the collision and resulting damage."

In Falgout v. Younger, La.App., 192 So. 706, the factual situation is somewhat different, but the applicable principles are the same. The accident occurred about 7 a. m. The visibility was about one hundred feet. The driver approaching from the rear of the obstructing truck attempted to pass it on the left and collided with plaintiff's vehicle coming from the opposite direction. The court found the approaching driver guilty of gross negligence in driving at an excessive speed and failing to keep his vehicle under proper control. The court found that the obstructing driver had placed no warning signals and had left less than the statutory clearance of fifteen feet.

It rendered judgment against those responsible for both vehicles. The court held:

"If the negligence of the drivers of the two trucks in this case combined to bring about the accident, a third person, without fault, as plaintiff was in this case, has a right to collect his full damage from any or all the defendants. We are forced to the conclusion that the combined negligence of the drivers of both trucks brought about the accident—that of Hebert in creating an unlawful obstruction in the road thereby blocking traffic without giving the proper signals, and that of Bourg in driving into this hazard at too fast a speed and in failing to have his car under control. Where a defendant is responsible for one of two or more proximate causes of an injury, he cannot escape liability because a third person is responsible for a concurrent proximate cause."

The defendants rely upon the decisions of the Courts of Appeal in Manning v. Fortenberry Drilling Co., La.App., 107 So. 2d 713, Williams v. Pelican Creamery, La. App., 30 So.2d 574, and Penton v. Sears, Roebuck & Co., La.App., 4 So.2d 547.

It appears futile to attempt a reconciliation of the these and other cases dealing with actions by third parties arising from collisions between a moving and stationary vehicle. This is rendered difficult by the ambiguity of the language of proximate cause. As employed by courts, proximate

cause is a legal concept without fixed content. It is used indiscriminately to refer to cause-in-fact, the scope of liability, and other negligence factors.

In the Williams case, this Court granted writs, but before submission it was compromised and dismissed. However, the case is distinguishable. In that case plaintiff's automobile (with lights burning) stopped momentarily behind a parked truck which had no flares in place. A large tractor and trailer approaching from the rear crossed into the left lane to pass. The tractor cleared the plaintiff's automobile, but the trailer struck it. The action of the passing tractor-trailer caused an oncoming car to take to the shoulder in order to pass the situs. The court absolved the parked truck from liability on the ground that the action of the passing truck had "no connection with the act of negligence of the driver" of the parked truck in failing to place flares. The court stated further: "* * * it must appear that the *manner of violation* was one of the proximate causes of accident and resulting injury." (Italics ours.) It is evident that the holding of the court was that the failure of the parked truck to display flares was not a cause-in-fact of the collision between the other two vehicles.

The Manning case appears to be based on a holding that stopping on the highway and failing to display flags was excusable, and hence there was no negligence on the part of the obstructing driver. The court held:

"* * * It is our finding James A. Manning alone was guilty of negligence and, accordingly, St. Paul Mercury Indemnity Company must be held liable in damages to Mrs. Manning."

That the reference to proximate cause is dicta is evident from the following language of the court:

"* * * Arguendo, even if we found negligence on the part of Whitney, such negligence had become passive at the time of the accident."

In the Penton case the violation alleged was the failure of the driver of the obstructing truck to leave a clearance of fifteen feet in parking on the highway as required by statute. It is not clear from the opinion whether the clearance space had any connection with the accident. If not, the decision is supportable on the ground that the violation was not a cause-in-fact of the accident.

Admittedly, the broad language of these decisions in reference to proximate cause conflicts with Falgout v. Younger and Malone v. Hughes, supra, as well as the views expressed herein. Insofar as such a conflict exists, we have elected not to follow these decisions. The doctrine of passive negligence, as stated in them, places undue emphasis on the chronology of the negligent acts and omissions. In so doing it insulates the first wrongdoer from liability to innocent victims. As applied to cases of the type here presented, it renders nugatory

the statutory provisions against the obstruction of highways.

The obstruction of a main artery of traffic without statutory precautions is fraught with danger to motorists. The traffic congestion and advancing speed of recent years have added to that danger.

We hold that the defendants are liable to the plaintiff for the damages sustained by it.

It has been the practice of this Court to remand cases to the Courts of Appeal to fix damages when that court has not passed upon the issue. See Felt v. Price, 240 La. 966, 126 So.2d 330, and the cases therein cited.

For the reasons assigned, the judgment of the Court of Appeal affirming the judgment of the district court is reversed and set aside. Judgment is rendered in favor of the plaintiff, Dixie Drive It Yourself System New Orleans Co., Inc., against the defendants, American Beverage Company and Northern Insurance Company of New York, in solido, in such sum as may hereafter be fixed; and the case is remanded in the Court of Appeal, Fourth Circuit, for the assessment of damages according to law. All costs of court are to be paid by the defendants.

HAMITER, J., concurs in the result.

McCALEB and HAMLIN, JJ., dissent being of the opinion that the judgment of the Court of Appeal is correct. See 128 So.2d 841.

137 So.2d 308
**BEL OIL CORPORATION et al.**