SAMUEL, Judge.
This is a suit for property damages resulting from a collision involving three automobiles. Plaintiff is the subrogee of the driver of one of the automobiles and defendants are the other two drivers involved and the insurer of one of them. The damages were stipulated and prior to the beginning of trial plaintiff dismissed its suit against Johnson, one of the defendant drivers. There was judgment in the trial court in *506 favor of plaintiff in the stipulated amount and against the remaining defendant driver and his insurer. Those two defendants have appealed.
From the findings of the district judge, and from our own analysis of all the testimony and evidence adduced during the trial, we conclude that the facts are as follows :
The accident happened on the Airline Highway in the Parish of St. John the Baptist at approximately 1:30 p. m. There had been some rain prior to that time but the weather was then clear and visibility was good. At the place where the accident occurred the highway was straight for several miles in both directions and consisted of four lanes, two for traffic traveling towards New Orleans and two for traffic traveling in the opposite direction towards Baton Rouge. The two sets of traffic lanes were separated by a neutral ground. There was a shoulder, approximately 20 feet in width, on that side of the highway reserved for New Orleans bound traffic.
The automobile driven by plaintiff’s subrogor, Boutte, in which his wife and 13 year old daughter were passengers, was proceeding in the direction of New Orleans, at a speed of approximately 40 miles per hour, when it suddenly struck a puddle of water in the roadway “drowning out” the motor and causing it to stop. Boutte, who walked with a cane as a result of a leg amputation and had a driver’s license restricted to use of automobiles with automatic transmissions, applied his brakes and stopped the car after it had rolled a short distance. It came to a stop in the outer or right lane near the edge of the road opposite a culvert which traversed the shoulder at that point. He was unable to move the car by use of its starter alone due to the fact that the mechanics of the automatic transmission prevented the starter from engaging while the car was in either forward or reverse gear. The car had been in its stopped position for a period of 3 to 5 minutes, during which time Boutte was occupied with attempts to start the motor and the two passengers remained in the automobile, when the car driven by Charpio, the defendant driver remaining in the case, ran into the rear of the stopped Boutte vehicle.
Johnson and Charpio were traveling in the direction of New Orleans some distance behind the Boutte automobile. Both were using the right or outer traffic lane. Johnson was some distance in front of Charpio and traveling at a speed of SO miles per hour. He saw the Boutte car, and realized it was either moving slowly or stopped, when it was 200 or 300 yards away from him and at that time he moved into the left or inside lane for the purpose of passing. Charpio testified that he first observed the Boutte automobile from a distance of about one-half mile; that he realized the Boutte car was stopped when he was about a block or slightly less away; and that he was unable to bring his car to a stop before the collision.
When the Charpio car ran into the rear of the Boutte automobile it pushed the latter forward and to the left into the path of the Johnson vehicle, causing a second collision between the Boutte and Johnson automobiles.
According to his own testimony, Charpio was traveling from Corpus Christi, Texas to New Orleans, had begun the trip at approximately 2:30 in the morning, and had stopped only for drinks during all of that driving. His wife was a passenger in the automobile. Understandably, she was asleep at the time of the collision. Charpio further testified that he was traveling at 50 miles per hour, but in view of the fact that he continued to travel in the right lane and passed the Johnson vehicle before the latter reached the Boutte car, he must have been traveling faster. In any event, again according to his own testimony, Charpio saw the Boutte car when he was one-half mile away from that vehicle and failed to realize it was stopped on the highway in time to avoid the collision.
*507 Charpio’s negligence is clear and is conceded by counsel for appellants. Their defense is based upon the alleged contributory negligence of plaintiff’s assured, Boutte. They contend that Boutte was guilty of contributory negligence in stopping on the main traveled portion of the highway when it was possible for him to pull over on the ■shoulder of the road and in remaining on that traveled portion of the highway without giving proper warning to oncoming vehicles. They rely upon LSA-R.S. 32:241 and the recent Supreme Court case of Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298. We do not agree with the contention. Neither the statute nor the cited case is authority for holding Boutte guilty of contributory negligence.
LSA-R.S. 32:241 (A) prohibits the parking of any vehicle upon the main traveled portion of a highway “ * * * when it is practicable to park it off the main traveled portion of the highway.” LSA-R.S. 32:241 (B) provides that “ * * * this rule shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vheicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic.”
The Dixie Drive It Yourself case held the driver of a truck negligent in stopping his vehicle squarely in the lane of traffic and allowing it to remain there for 8 to 10 minutes without displaying red signal flags or reasonably discharging his responsibility to protect traffic although he had a companion in the truck with him; that driver had been accompanied by a companion. The statute requiring the carrying and use of red flags by trucks and certain other named vehicles (LSA-R.S. 32:442) does not apply to automobiles (nor to the Boutte vehicle in the instant case), which are not required to carry or use red flags. And a reasonable discharge of the responsibility to protect traffic by the truck driver in Dixie, with the longer period of time involved and the presence of the companion, is quite different from a reasonable discharge of such responsibility by Boutte under all the circumstances here involved, particularly the shorter period of time and the fact that he was accompanied only by his wife and daughter.
In the instant case it was impossible for Boutte to avoid stopping or to remove his vehicle in time to avoid the collision. And it would be unreasonable to hold that he could and should have stopped his car on the shoulder of the road. The record is devoid of any evidence showing either the distance an automobile traveling 40 miles per hour is likely to coast when its engine stops, or the condition of the shoulder within such coasting distance. Boutte was faced with a sudden emergency and the presence of the culvert, which prevented him from going on the shoulder at or too near that point, complicated his problem. During the short time his car remained stopped prior to the occurrence of the collision, 3 to 5 minutes, he tried, quite properly and naturally but without success, to get his motor started. These attempts occupied all of those few minutes so that, in addition to his physical incapacity, he himself was unable to “protect traffic” as set out in the quoted portion of the statute. Nor during that time could he be reasonably expected, as contended by the appellants to require his wife or young daughter to proceed some distance to the rear of his vehicle and there give signals warning oncoming traffic of the fact that the car was stopped. As Boutte testified, it was a “good thing” neither did so. We believe, as did the trial judge, that Boutte acted as a normal prudent driver would have acted under all the facts and circumstances here involved and that he was not guilty of contributory negligence.
For the reasons assigned, the judgment appealed from is affirmed; costs to be paid by appellants.
Affirmed.