SARTAIN, Judge.
The legal issues presented in this litigation [1] arise out of an armed robbery of unmounted diamonds and their recovery by the authorities. During the interim period they were first pledged to a police informant and later mortgaged.
The participants are: Walter Morton, the victim of the robbery; Thomas E. Pearson, an accomplice in the robbery; Marion Ales-si, a police informant; representatives of the Police Department of the City of Baton Rouge and the District Attorney’s office for the Parish of East Baton Rouge; and, General Credit Plan, Inc., through its manager, Orville Howes.
The following events are not disputed. In April of 1972, during the course of an armed robbery a certain quantity of unmounted diamonds were stolen from Walter Morton.
Approximately a year later, Pearson approached Alessi seeking a loan of $10,000.00 for a period of ninety days. The diamonds were to be pledged or pawned to Alessi as security for the loan. Alessi informed Detectives Alford and Rogillio of the Baton Rouge Police Department of Pearson’s request. Ultimately, the loan was made and Alessi was given the diamonds. He placed them in a safety deposit box at the Fidelity National Bank of Baton Rouge.
Deputy Alford examined the diamonds at the bank and it was determined that they were in fact the diamonds that had been stolen from Morton. Whereupon, a plan was devised to apprehend Pearson when he attempted to redeem the diamonds from Alessi. Because Alessi was apprehensive *1240 about dealing with Pearson a second (unidentified) undercover agent was used.
Pearson owned and operated a jewelry store in downtown Baton Rouge.
Orville Howes, as the sole owner, operated and managed General Credit Plan, Inc. His principal office is also located in Baton Rouge. Howes had known Pearson for five or six years and they frequently met for coffee. Several months prior to the instant transaction, Pearson borrowed $1400.00 from Howes and gave several diamond rings as security. The loan was timely paid. During the course of later visits Pearson asked Howes if he would lend him $10,000.00 to be secured by unmounted diamonds. Howes agreed. On April 26, 1973, appropriate instruments were drafted and executed and the money was advanced Pearson.
The second undercover agent was then called to Pearson’s place of business. He had the diamonds with him and turned them over to Pearson. For some reason, not explained in the record, Pearson took half of the diamonds and gave them to Howes. When Pearson returned to his place of business, the agent left with the $10,000.00. As he left he signaled Deputies Alford and Rogillio who were waiting nearby and Pearson was arrested. Pearson, along with the remaining half of the diamonds and the $10,000.00, was taken to Police Headquarters.
Alessi was called. He came to the interrogation room and took “his” $10,000.00 and left. Pearson, of course, was incarcerated.
The transaction between Howes and Pearson occurred at approximately 3:30 p. m. or after banking hours. Howes kept the diamonds with him overnight and the next morning he placed them in his safety deposit box at another bank. He was unaware of Pearson’s arrest the previous afternoon until a mutual friend asked “if he had read the morning paper.” That afternoon, Howes (suspecting that his security was involved) and his attorney went to the District Attorney’s office and advised the latter of the loan and the diamonds. The District Attorney, thinking that the $10,-000.00 was being held as evidence, indicated it was “just a matter of filing some legal forms” to get the money released. Subsequent events disclosed that the diamonds were stolen and that the $10,000.00 had been released to Alessi.
Appellant contends that the City of Baton Rouge and the District Attorney for the Nineteenth Judicial District (East Baton Rouge Parish) are liable to him for the failure of their respective employees to adhere to the requirements of R.S. 15:41[2] and C.Cr.P. Art. 167,[3] relating to the disposal of property held as evidence in a criminal proceeding; and alternatively, that these same employers are liable for actionable negligence on the part of their respective employees for permitting the release of the funds without first ascertaining the origin and rightful ownership thereof. The failure of the trial judge to impose liability on these named defendants for these same reasons is also cited as error here on appeal.
*1241 The misconduct alleged to have been committed by the officers is, as stated above, their failure to comply with R.S. 15:41 and C.Cr.P. Art. 167. The risk encountered is that their failure to do so permitted the money to fall into the hands of a third party (Alessi) before appellant could assert his right to the same.
When liability is sought to be imposed for the breach of a duty allegedly imposed by statute, it is necessary to determine if the risk and harm “encountered by the plaintiff fall within the scope of the protection of the statute.” Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298, 304 (1962). More particularly, inquiry is made to determine whether the plaintiff falls within that class of persons sought to be protected by the statute. We do not find that R.S. 15:41, relied upon by appellant, imposes any duty on these officers that inures to the benefit of or was designed to protect plaintiff.
The statute refers to the “owner” of “property seized” in connection with a criminal proceeding. Plaintiff was not the owner of the property ($10,000.00), Pearson was the owner. Howes gave the money to Pearson, Pearson gave it to the undercover agent. Howes does not claim that he was the owner of the property after he gave it to Pearson. His complaint is that the money was released before he could assert a claim against Pearson. Howes is in no better position than any other creditor of Pearson. He readily testified that he knew and had done business with Pearson. He made the loan to him because “I trusted the man.” The legal relation between appellant and Pearson is that of creditor-debtor. The statute is designed to afford the owner of property seized in a criminal proceeding a means by which that owner can effectuate the release of his property where the same is not needed for evidence. It is not designed to protect a general creditor of the owner.
We apply the same reasoning above with respect to appellant’s contention that these officers negligently permitted the conversion of $10,000.00 i. e., that they permitted the money to be taken by Alessi. However, we go one step further: In Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620, 623, in considering the extent to which legal consequences flow after an alleged act of negligence, the court stated: “. . . The same policy considerations
which would motivate a legislative body to impose duties to protect from certain risks are applied by the court in making its determination. ‘All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises. How appropriate is the rule to the facts of this controversy? This is a question that the court cannot escape.’ Malone, Ruminations on Cause-In-Fact, 9 Stanford L.Rev. 60, 73 (1956).”
We do not find that the officers in the instant case could or should have anticipated that the money given to the undercover agent was in fact obtained from appellant. To the contrary, they had every reason to believe that it was Pearson’s money and that Pearson fully intended to give it to Alessi. The record is devoid of any evidence to the contrary. For an excellent discussion of duty-risk analysis, see: Robertson: Reason Versus Rule in Louisiana Tort Law, Etc., 34 L.L.Rev. 1 (1973).
Accordingly, the judgment of the district court is affirmed at appellant’s costs.
AFFIRMED.

. This case was originally consolidated with Walter Morton v. General Credit Plan, Inc., brought by Walter Morton seeking the possession of the stolen diamonds. However, at the time of trial it was stipulated that only the instant matter would be litigated.

. If there is a specific statute concerning the disposition of the seized property, the property shall be disposed of in accordance with the provisions thereof.
If there is no such specific statute, the following governs the disposition of property seized in connection with a criminal proceeding, which is not to be used as evidence or is no longer needed as evidence:
* * jfc * if:
Where the release of seized property is sought by a person claiming to be the owner, it shall be released only upon motion contradictorily with the clerk of court. In all other cases the court may either render an ex parte order for the disposition of the property as herein provided on motion of any interested person, or on its own motion, or the court may require a motion contradictorily with the apparent owner or the person in possession of the property at the time of the seizure.

. When property is seized pursuant to a search warrant, it shall be retained under the direction of the judge. If seized property is not to be used as evidence or is no longer needed as evidence, it shall be disposed of according to law, under the direction of the judge.