MARVIN, Judge.
A trucking company and its liability insurer, the original defendants, appeal a judgment denying contribution from the State Department of Transportation and Development in an action arising out of a 1978 accident that involved one of its trucks which had been issued an overheight permit by the State to haul two 12' diameter tanks over a route designated by the State.
When the trailer went under a railroad overpass, one of the tanks was knocked from the trailer and into the path of a following vehicle, injuring in the collision the two original plaintiffs, the driver and passenger of that vehicle.
The trucking company contends that the State negligently failed to provide a safe route with the 14' clearance that was requested by the trucking company’s application for the permit.
The record supports the factual conclusions that the height of the tank and trailer exceeded the 14' clearance requested by the trucking company and that the overpass provided a 14' clearance. These findings negate the conclusion that the State’s issuance of the permit was a cause in fact of plaintiffs’ injuries and obviates our determining the scope of the assumed duty of the State to designate a “safe route.” The trucking company settled with plaintiffs and pursued its reserved rights to claim contribution from the State.
We discuss the factual circumstances and affirm. See Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962), discussed by Professor Malone in Ruminations on Dixie Drive It Yourself Versus American Beverage Company, 30 La.L.Rev. 363 (1970); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972), discussed by Professor Robertson in Reason Versus Rule in Louisiana Tort Law: Dialogues on Hill v. Lundin & Associates, Inc., 34 La.L.Rev. 1 (1973). Resolution of the scope of duty question begins with the cause in fact inquiry. Malone, 30 La.L.Rev. at 369-370.
FACTS
When attached to the tractor-truck, the bed of appellants’ trailer is 2½' high in the front and 3' high at the rear. The truck driver said he “knew” the height of the trailer at each end and that the diameter of the tanks was 12'. The tanks, 15' tall when standing, were laying on their sides, and were secured on the trailer with chains. The trucker’s permit clerk applied for the permit by telephone, informing DOTD of the diameter and size of the tanks and requesting a 14' clearance. Neither the driver nor the permit clerk measured the height of the load before applying for the permit or before the load departed to its destination. The driver admitted the accuracy of the measurements of the tank and trailer, made after the accident, but insisted that he “relied” on the 14' clearance stated in the permit.
The route designated by DOTD was U.S. Hwy. 171 from Oil City to Zwolle. The manual used by DOTD to select routes for permit loads is entitled “Bridge Locations, Clearances, and Restrictions.” The accident occurred in 1978. The manual used by DOTD to designate the route is dated in 1975 and shows the measured clearance of the overpass in question, about four miles south of Mansfield, to have been 14' at the center and 14'2" at the curb lines of the highway.
The overpass was marked or “signed” as a 13'8" clearance. A DOTD supervisory employee explained, however, that overpass clearances are always marked several inches lower than actually measured to allow some “tolerance [or] leeway” for inaccurate measurements that may be made in a permit application and for such things as shifts in the load and bumps that might arise in the pavement.
DOTD measurements made about nine months after the accident showed clearances ranging from a minimum 14' to a maximum 14'7" at the curb line. The DOTD manual was changed after these measurements were made to show a 13'10" clear- *922 anee at the center line and 14'1" at the curbs, apparently to allow for some additional “tolerance.”
The aggregate height of the tanks (12') and the trailer (2V2'-3') ranged from 14'6" to 15' plus the thickness of the chains that secured the load, while the actual clearance of the overpass was 14' at the center line to 14'2" or more at the curb lines. Under these circumstances, we cannot find that DOTD breached its assumed or arguable duty to provide a safe route with 14' clearance as requested by the trucking company’s application. DOTD’s neglect or conduct, therefore, was not a cause in fact of plaintiff's injuries.
We adopt the trial court’s findings, which we have summarized and supplemented and which are not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). Simply stated, the load exceeded by at least 6" the 14' clearance requested. We shall not and need not speculate whether a load height of only 14' as requested would have passed safely under the overpass. The State’s assumed duty to provide a safe 14' clearance, under any analysis, would not extend to “protect” those injured by the attempt to drive a load of 14'6" or more under the overpass.
We find no error and, at appellants’ cost, AFFIRM.