STOKER, Judge.
The plaintiff, Eli Melvin Broussard, and the third party plaintiff, Crane Brothers, Inc., have appealed the judgment of the trial court which rejected their demands against the State of Louisiana, through the Department of Transportation and Development.[1] The appellants have assigned as error the trial court’s finding that the absence of a shoulder on La. Highway 82 was not the cause-in-fact of the plaintiffs accident and resulting injuries. We affirm the judgment of the trial court.
The trial judge who decided this case wrote excellent and extensive reasons for judgment. After a careful study of the record and exhibits, we find that the trial court’s findings are correct and its resolution of the case is proper. We adopt the trial court’s reasons for judgment as our own opinion in this case. We set forth these reasons in full as follows:
“This is a suit for personal injuries arising out of an automobile accident. Plaintiff, Eli Melvin Broussard, brought suit against Crain Brothers, Inc. and its insurer Northwestern Insurance Company. The defendant Crain Brothers filed a third party demand against the State of Louisiana and, subsequently, the plaintiff joined the State of Louisiana as a party defendant. Before trial, settlement between the plaintiff and the original defendants had been reached and, so, the trial proceeded against the State of Louisiana as a sole remaining defendant. The suit against the State is based upon both negligence and on the theory of strict liability.
“THE FACTS
“The facts are largely undisputed but there are one or two areas of disagreement. A statement of facts, as found by the court, is given here with explanations as to the resolution of the areas of disagreement.
“The accident occurred on Louisiana Highway 82 between Johnson Bayou and Holly Beach, Cameron Parish. This stretch of road is remarkable in that it is on the very edge of the Gulf of Mexico. High tides and southerly winds bring waters across the road on occasion. This proximity to the Gulf of Mexico has caused a maintenance headache for the Department of Highways. To date, no method has successfully halted erosion of the shoreline and the consequent undermining of the roadbed. At the time of the accident in January of 1982, the south shoulder of the road was in severely deteriorated condition at Mile Marker 22.1, the accident site. The travel portion of the road was still usable and the Department of Transportation had simply closed off the use of the south shoulder by putting delineators with reflectors on the south shoulder about every one hundred feet. This allowed traffic to use the south bound lane for parking where possible, but any effort to proceed along the shoulder would be interrupted.
“On the day of the accident, plaintiff was westbound on Louisiana 27 [sic] and driving at a moderate rate of speed. He had just picked up a hitchhiker, one Kenneth Dyer. The road was dry but the weather was foggy. Near the point of impact, a thick fog bank had settled. In the fog, coming from the opposite direction, were two vehicles which figure into the subsequent collision. Approaching in the eastbound lane was an automobile about which little is known. It is described as white or *1295 light in color. There is some dispute as to whether it was traveling slowly or stopped in that lane. None of the witnesses who testified at the trial were of the impression that the car was stopped. This latter suggestion came from comments made to the investigating officer on the day of the accident. It is the court’s finding that the weight of the evidence is that the white car was in motion in the east bound lane.
“The other vehicle approaching was an eighteen-wheeler truck, being driven by John Pierce and owned by Crain Brothers, Inc. Some three hundred feet before the point of impact, Pierce’s truck had come upon the white car and was attempting a passing maneuver. Pierce testified that the visibility was fifty to sixty feet and that he had been in fog for two or three miles before the accident. After he was entirely in plaintiff’s lane (westbound lane), he saw plaintiff’s truck coming and he tried to avoid the collision by driving first to the left toward the northern shoulder and then back into the travel lane, applying his brakes the entire time. The investigating trooper found two hundred feet of skid marks totally in the westbound lane. A head-on collision with plaintiff’s vehicle followed. The point of collision was on the northern edge of the westbound lane.
“THE LAW
“As mentioned earlier, the plaintiff submits two theories of liability. It is the court’s conclusion that it is unnecessary to reach the question of whether the highway was unreasonably defective or whether the condition of the highway was the result of negligence on the part of the State. This is because the court has concluded that the causation prerequisite is missing.
“The threshold question on the issue at hand is whether or not the defect or the negligence of the defendant can be said to be a cause-in-fact. This is a factual inquiry and not the same as that associated with “proximate cause” or “legal cause”. There must be a causal connection based in fact between the defect or the negligence and the occurrence which caused the injury.
To make that inquiry to the facts at hand, the plaintiff must establish that there was a causal connection between the apron of the highway on the south side and the accident which occurred on the northern most lane of that same highway. The condition of that apron could only have contributed to this accident in one of two ways. Either it brought about the dangerous situation of Pierce’s truck being in the wrong lane of traffic or it interfered with a resolution of that danger once the emergency was realized.
“Dealing with the first question, it cannot be successfully argued that Pierce’s truck was in the passing lane due to the condition of the southern shoulder.
“When first constructed, this highway was twenty-four feet wide with two ten foot paved shoulders. It was designed to have two opposing lanes of traffic and the shoulders were not designed for travel thereon. Before the southern shoulder fell into disrepair, its character as a parking shoulder was clear from the use by the Department of Transportation and Development of raised, reflecting markers. After the damage caused by a 1980 storm, the department added the delineators with reflectors. These delineators further discouraged the use of that southern-most apron for travel.
“When Pierce’s truck encountered the white car, he went into the passing mode prescribed by the highway regulations. R.S. 32:71 et seq. Plaintiff argues that the condition of the southern shoulder denied Pierce the opportunity to pass on the right rather than to the left as he did. This is unrealistic in view of both the highway regulations and the universal driving practice of the American public. Two of the facts presented to the court preclude the idea that Pierce was confronted with an emergency situation before he began the passing maneuver. First, his own assessment of the situation when coming upon the white car was revealed in his testimony when he said, “I could have stopped if I had to”. Secondly, the two hundred feet of skid marks which were left by his trailer *1296 just immediately before the impact occurred completely in the westbound lane. This latter observation supports a view that he was completely in the westbound lane before any emergency developed.
“Hence, the condition of the southern shoulder played no part in placing Pierce’s truck in its precarious position in the passing lane.
“Next, the condition of the southern apron did not render it more difficult for Pierce to extricate himself from the emergency he had created. His inability to return to the proper lane was caused by the presence of the “white” car which he was passing and not by the condition of the southern shoulder. The evasive actions of the two oncoming drivers, in their attempts to avoid the collision, do not involve the southern shoulder at all.
“As mentioned earlier, the court’s inquiry into cause up to this point has been simply one of fact. The causal link between the alleged fault of the defendant and the damaging incident is nonexistent. In those cases where cause-in-fact is not clear, the courts have devised tests to help in the determination. For those more comfortable with a verbal formula, use of the “but-for” analysis or the “substantial factor” test will render the same result. Dixie Drive-It-Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962); Rue v. State Department of Highways, 372 So.2d 1197 (1979). “In view of the court’s finding that no cause-in-fact relationship existed between the condition of the highway and the accident, all further inquiries by the court are unnecessary.”
“Judgment is rendered in favor of the defendant, Department of Transportation and Development and against the plaintiff at plaintiff’s costs. A judgment in accordance with these views will be signed upon presentation.”
Accordingly, for the reasons assigned by the trial court stated above, the judgment of the trial court is affirmed. The costs of this appeal are to be assessed to the appellants.
AFFIRMED.

. Crane Brothers, Inc. is spelled as per the official record of the proceedings. The correct spelling is Crain Brothers, Inc.