CIACCIO, Judge.
This is a suit to recover against an electric utility for damages resulting from a power outage. Plaintiff, Charles Schulze, seeks damages for the loss of approximately 400 orchid plants. Plaintiff brought this action against Louisiana Power & Light for breach of contract and in tort, alleging that LP & L was negligent in failing to adequately maintain their equipment. From an adverse judgment, defendant, LP & L, appeals. We reverse.
Plaintiff is the owner of a home and adjacent greenhouse located at 414 West Judge Perez Drive in Chalmette, Louisiana. A licensed horticulturist, plaintiff raises and sells orchids as a hobby. The orchids which are the subject of this litigation were housed in a free standing greenhouse located behind plaintiff’s home. The greenhouse is equipped with a gas heater that contains a blower which requires electricity for operation. The thermostat in the greenhouse is also electrically controlled.
The initial electrical service to plaintiff’s property was provided by defendant, Louisiana Power and Light (LP & L) by virtue of a service agreement executed by the plaintiff’s wife on June 22, 1954. Under the terms of this service agreement, LP & L agreed, among other things, to provide continuous electrical service to plaintiff’s residence. That agreement provides, in pertinent part:
15. Continuity of Service. The Company shall use reasonable diligence to provide safe, adequate and continuous service but shall not be responsible for loss or damage caused by the failure or other defects of service when such fail *23 ure is unayoidable or due to unforeseen difficulties or causes beyond its control.
The evidence shows that on January 20, 1985 the temperatures in the New Orleans area plummeted from the low fifties to the mid-teens by midnight that night. The temperature remained below freezing through the early morning hours on January 21, 1985.
As a result of the low temperatures coupled with high winds, problems developed at several LP & L power plants serving the New Orleans area. Consequently, LP & L disrupted electrical service to plaintiffs property for approximately four hours beginning at 3:51 a.m. on January 21, 1985. The facts surrounding this incident are not in dispute.
Donald Aswell, LP & L’s Senior Vice-President of Energy and Supply testified as follows: At 12:20 a.m. on January 21, 1985, the Waterford 2 power plant was shut down “due to generation cooling control problem” caused by frozen instrumentation. At 1:45 a.m. Unit No. 5 at Nine Mile Point plant tripped without warning due to a frozen flow measuring device which produced an erroneous reading of inadequate water flow for safe operation of the unit. The flow measuring device is designed to protect the unit from massive failure. These devices are insulated to guard against the elements, but LP & L discovered during its investigation after January 21, 1985 that there had been a separation of the insulation in this particular device. Although the insulation was not broken, it exposed the heating cable that was used for freeze protection. When the flow measuring device froze, the unit shut down completely to protect itself.
Mr. Aswell further testified that at 1:48 a.m. Unit No. 1 at the Little Gypsy plant tripped due to the freezing of a water regulator valve, and at 3:44 a.m. Unit No. 2 at Little Gypsy shut down due to unknown causes. Mr. Aswell testified that all of this instrumentation had been previously exposed to freezing temperatures, but had not frozen before January 21, 1985.
In addition to the plants which were shut down as a result of the freeze, the evidence shows that several other generating plants were out of service on this date for routine maintenance and repairs.
As a result of the shut down of these generating plants, LP & L did not have the capacity to supply enough electricity for the existing demand. To prevent a complete blackout, LP & L then began shedding some of its load by disconnecting certain customers on a rotating basis for approximately four hours at a time.
Plaintiff's residence and greenhouse was one of the locations to which the power company disrupted service. The evidence shows that plaintiffs home lost power at 3:51 a.m. on January 21, 1985, and was returned to service at 6:30 a.m. that same day. As a result of the loss of electricity, the heater in the greenhouse stopped functioning, causing most of the orchid plants in the greenhouse to freeze and die. Although the evidence shows that plaintiff was aware of a warning device which would alert him to a power failure so that he could use an alternative heating source, no- such device was installed in the greenhouse prior to freeze.
Plaintiff argues that LP & L failed to maintain and inspect its equipment, and failed to notify him of the suspension of service thereby causing his damages. Plaintiff introduced no expert testimony to support this argument.
In defense of these assertions, LP & L contends that its equipment is specifically designed to withstand temperatures of 10 degrees at 50 mile an hour winds. In addition, the evidence shows that LP & L conducts regularly scheduled inspections of all its facilities, and that its facilities are routinely shut down for this purpose. LP & L contends that the break in insulation in the Nine Mile Point Plant could not be detected in the course of its normal routine inspections. According to LP & L, this is because the inspections are made while the machines are not operating or “cold” and the crack was only visible when the power was turned on following the power outage. LP & L argues that the difficulties experienced with their power plants were unforeseen and unanticipated. This type of prob *24 lem had never occurred before, and was due to the hard freeze which occurred on January 21, 1985.
The trial court found in favor of the plaintiff, awarding him damages for the replacement of the lost plants. The court reasoned:
Contrary to defendant’s assertion, the power outage was not necessitated by unavoidable and unforeseeable difficulties beyond LP & L’s control. The freezing of the flow measuring device was not an Act of God. It was not beyond LP & L’s control to maintain equipment inspections and insulation. The Court finds that LP & L was negligent not because of the loss of electricity but because the Company failed to make certain that their equipment was in proper working order and sufficiently insulated. (Reasons for Judgment, p. 2)
We disagree.
To determine whether tort liability exists under the facts of a particular case, the Louisiana Supreme Court has adopted a duty-risk approach. Shelton v. Aetna Casualty and Surety Company, 834 So.2d 406 (La.1976); Hill v. Lundin and Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Dixie Drive It Yourself v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962).
To hold a defendant liable for negligence under the duty risk analysis, an affirmative answer is required to the following inquiries: 1) was LP & L’s conduct a cause-in-fact of plaintiff’s damages? 2) what, if any, was the duty owed by LP & L to plaintiff? 3) was the risk, and the harm cause within the scope of protection afforded by this duty? 4) was there a breach of this duty? Williams v. City of New Orleans, 433 So.2d 1129 (La.App. 4th Cir. 1983).
At the outset, we note that causation is not at issue here. The loss of plaintiff’s plants would not have occurred if LP & L had not discontinued electrical service to plaintiff's residence. The power outage initiated by LP & L was a cause-in-fact of plaintiff’s damages.
We turn next to LP & L’s duty. An electric utility is bound to use reasonable care in the installation, operation and maintenance of their electric lines, and will be responsible for any conduct falling short of this standard. Williams, supra, 433 So.2d at 1132. However, an electric company is not the insurer of the property of its customers, and is not legally bound to safeguard against occurrences that cannot be reasonably expected or contemplated. Vincent v. Beauregard Elec. Co-op., Inc., 536 So.2d 798, 803 (La.App. 3rd Cir. 1988).
Recognizing this duty, we find that the third inquiry is satisfied here, as the scope of the protection by this duty encompasses the protection of customers from a sudden discontinuance of service which causes property damage.
Clearly, LP & L owed a duty to plaintiff. The final inquiry under duty risk analysis is whether LP & L breached its duty.
Testimony established that LP & L’s equipment was specifically designed to withstand freezing temperatures such as the ones which occurred here. The equipment which was affected here had never frozen before this date, although it had been previously exposed to freezing temperatures. Further, LP & L conducted routine inspections of all of its equipment every 18 months. During its inspection of the Nine Mile Point Plant prior to this freeze, LP & L made no discoveries of any cracks in the insulation.
The record also shows that the power outage which occurred was a result of a series of events, and not just the shutting down of the Nine Mile Point Plant. Several plants were shut down that night not as a result of any negligence on the part of LP & L, but as a result of the severe weather conditions. The reliance of the trial judge on the problems at the Nine Mile Point as being the cause of the power outage is clearly wrong and not supported by the record.
The unusually hard freeze which occurred in New Orleans on January 21, 1985 was an act of God, and was not reasonably foreseeable by LP & L. The shut down of the power plants occurred rapidly and with *25 out warning. LP & L was in an emergency situation, and did not have time to notify its customers of the suspension of service. The testimony is convincing that the plants were shut down due to extraordinary conditions, and not because of any lack of care on LP & L’s part. See Lavergne v. Central Louisiana Electric Co., 503 So.2d 698 (La.App. 3rd Cir.1987).
Based on the overall circumstances, we find that the power company acted reasonably and with the commensurate standard of care. Our review of the record discloses that under under the particular facts of this case, the factual findings of the trial judge that LP & L was negligent in maintaining its equipment is manifestly erroneous. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
For the reasons assigned, the judgment appealed from is reversed and set aside. Plaintiff's suit is dismissed at his costs. All of the costs of the appeal are assessed against plaintiff.
REVERSED AND RENDERED.