JASPER E. JONES, Judge.
The Constitution provides in part that when a judgment of a district court is to be modified or reversed and one judge of the court of appeal dissents, the case “shall be reargued before a panel of at least five judges prior to rendition of judgment.” La. Const. Art. V, § 8(B) (1974).
The original consideration of this appeal by a three-judge panel produced this result and the case was reargued before a five-judge panel.
This appeal involves the consolidated cases of William D. Truluck v. Raymond Vernon Clark and Dallas Crowley, No. 14,-566 and Hartford Insurance Co. v. Gibsland Wood Co., Inc., Dallas Crowley, and Insured Lloyds Insurance Co., No. 14,567. Defendants in # 14,566 appeal a judgment rendered against them for personal injury damages in favor of Truluck. Defendants in # 14,567 appeal a judgment against them for damages to the vehicle which Tru-luck was operating in favor of Hartford Ins. Co., the collision carrier on the vehicle, who had been subrogated to the property damages after having paid the owner of the vehicle for damages to the vehicle.
The accident occurred on Dec. 18, 1978 at about midday. The weather was clear and dry. Defendant, Dallas Crowley, an employee of Raymond V. Clark and Gibsland Wood Co., Inc., was driving a loaded 1965 Ford pulpwood truck in a northerly direction on La. 154, a two-lane black-topped highway in rural Bienville Parish, La., when because of an engine malfunction he stopped the vehicle in the northbound lane of the highway. The truck was stopped on a slight incline in a moderate right curve. The vehicle was entirely in the northbound lane on the paved portion of the road with the left side of it being about two to three feet from the center lane. Crowley did not remove the vehicle to the shoulder of the road because there was only a two to three foot shoulder with a deep ditch adjacent to it. Crowley abandoned the pulpwood truck about 30 to 40 minutes after it stopped, without posting any warning devices, all contrary to the requirements of LSA-R.S. 32:141[1] and LSA-R.S. 32:368 [2].
*1238 A short time after Crowley abandoned the wood truck, Truluck, age 83, driving a 1972 Chevrolet automobile in a northerly direction on Hwy. 154, approached the location of the stalled truck and while attempting to pass it on the left side in the southbound lane of 154, collided with the left rear wheel of the parked truck, lost control of his car, and came to a stop some 140' north of the truck in a ditch on the east side of the highway.
The trial court found Truluck free of negligence and concluded the accident was caused solely by the negligence of Crowley because he had abandoned the stalled truck without attempting to protect traffic from it as required by LSA-R.S. 32:141, and because of his failure to install any warning devices required by LSA-R.S. 32:368.
Appellants assert numerous detailed assignments of error, but all of them are directly related to and form a part of appellants’ two basic assignments of error, one being that the trial court committed error in finding negligence on the part of Crowley, operator of the truck, and the second being the finding of the trial court that Truluck was free of any negligence which contributed to the accident. Because we find Truluck was guilty of negligence which contributed to the accident which requires reversal of the judgments rendered in each of these consolidated cases, we find it unnecessary to address the issue of the negligence of the driver of the wood truck.
Pictures of the area where the accident happened are contained in the record. There are a series of pictures taken on May 23, 1980 wherein the truck loaded with pulpwood that was involved in the accident was placed in the identical position on the highway where it was when the accident occurred. The location where the truck was placed for the purpose of these pictures was the place it was on the highway at the time of the accident as pointed out by a deputy sheriff of Bienville Parish, who had arrived at the scene of the accident shortly after it occurred.
As Truluck approached the stalled truck, he was coming down a hill, and one of the pictures taken in May, 1980 reflects he should have clearly been able to observe the stalled truck when he reached a distance of 485 ft. from it. This picture shows the foliage from some gum and pine trees, the base of which were 14 ft. east of the blacktop roadway, extended slightly over the edge of the paved portion of the highway, and which would have obstructed Truluck’s view of the right top side of the loaded truck. A picture taken on the same day 416 ft. from the parked loaded truck establishes there is only the slightest portion of the right top rear of the truck obscured from vision by the foliage of the trees. A picture taken 330 ft. south of the parked loaded pulpwood truck reflects the truck is totally visible and that the foliage of the trees located on the east side of the highway does not in any way impair the vision of a northbound motorist approaching from the south. Though these pictures were taken more than two years after the accident occurred, they show essentially the same view of the area where the accident occurred as is reflected in a series of pictures contained in the record which were taken on Feb. 7, 1979, less than 60 days from the time the accident occurred on December 18, 1978, with the single exception that the foliage *1239 on the trees that extended slightly over the northbound lane in the February 1979 pictures appears to be less thick and therefore creating less obstruction to the vision of northbound motorists than was the foliage reflected in the May, 1980 pictures. The slight difference in the appearance of the leaves of the trees in the 1979 and the 1980 pictures no doubt can be explained by virtue of the fact that the numerous gum trees appearing among the pine trees had no foliage upon them at the time the photos were taken in Feb. 1979. We observe that there also would have been no foliage on the gum trees when the accident occurred in Dec. 1978.
The Louisiana State Trooper that investigated this accident testified on the day following the accident he checked the vision of a northbound motorist approaching the site of the stalled truck by placing a man at the location where the truck had been, and concluded that northbound motorists should have seen the truck 300 ft. before arriving at it. The trooper’s observation on the day following the accident is consistent with the pictures in the record because it is apparent that an approaching northbound motorist would have been able to observe a large pulpwood truck sooner than he could observe a man standing where the truck had been.
Truluck testified he saw the stalled truck when he was 130 steps (390 ft.) from it, and that at the time he was traveling only 30 mph. He stated he continued to observe the truck from the first time he saw it and he could easily have stopped, but did not do so because he thought the truck to be moving. He stated he was simply creeping along waiting to find a place to pass the moving truck:
“Q. From that time until you realized that the truck was stopped did you look at the truck the whole time, did you keep it in vision in front of you?
A. No, I thought he was moving on. I just creeping along there and trying to find a place I could pass him when I got to him.
Q. Well what I mean is when you were catching up to the truck, Mr. Truluck, when you were catching up to him and getting closer were you still looking at the truck that whole time?
A. I was looking at the truck, yes, sir, that’s right.
Q. You had the truck in full view?
A. That’s right.
Q. And you could see the truck?
A. Uh huh (yes).
Q. But you still didn’t realize it was stopped?
A. I didn’t realize it was stopped. I never seen anything like that before in my life.”
Truluck testified he did not realize the truck was stopped until he was within a few feet of the rear of the stalled truck, at which time he attempted to pass to the left of the truck in the lane of the highway provided for southbound traffic, whereupon his right front tire collided with the left rear wheel of the truck, causing him to lose control of his car and run into the ditch on the east side of the highway north of the truck.
The trial judge in his reasons for judgment made the following statement with regard to Truluck’s testimony:
“Regarding plaintiff’s testimony, this Court was convinced that he could not remember in pertinent detail what happened. He suffered amnesia for some time after the accident. Much of his testimony was obviously un purposefully, incredible; for instance, testimony that he did not realize the truck was immobile until he was only five or ten feet away, when he swerved (leaving no skidmarks, etc.) and almost got by. Had he been going slowly enough to accomplish that feat, he could not have careened another 148 feet following the impact, etc. He was 83 years of age and un purposefully very uncertain mentally. Accordingly, the Court must rely upon physical evidence introduced to reconstruct pertinent plaintiff actions prior to the accident and finds that:
1. Plaintiff was not traveling at an excessive rate of speed;
*1240 2. There was no evidence of skid marks or tire marks by the plaintiff’s vehicle prior to the collision;
3. The right front of plaintiff’s vehicle struck the truck’s left rear tire;
4. Plaintiff recognized that defendant’s truck was stalled in his right of way at a distance sufficient to permit maneuvering that almost avoided the peril;
5. After collision, plaintiff’s vehicle careened past the truck in the southbound (oncoming) lane and came to rest in the east ditch, about 148 feet after the collision.”
We agree with the trial court’s evaluation of Truluck’s testimony with regard to his statement that he did not realize the truck was stopped until he was only 5 or 10 feet away from it, at which time he commenced his maneuver to pass the truck to the left. Obviously, this testimony is incorrect because Truluck was bound to have been further south of the truck than 5 to 10 feet when he commenced his maneuver to enter the southbound lane of Hwy. 154, or otherwise he would have collided with more of the rear of the truck than the left rear wheel.
We find Truluck’s testimony to the effect that he observed the stalled truck 130 steps before he reached it and was traveling at 30 mph at this time clear and unambiguous as it is contained in the record. The pictures in the record and the testimony of the trooper clearly support the reasonableness of Truluck’s statement as to the distance he was from the truck when he observed it. His testimony about his speed and his observation of the truck is explained and made unequivocally clear when he states he was only creeping along the highway awaiting an opportunity to pass the truck just before he realized the truck was stopped. To the extent that the quoted paragraph from the reasons of the trial judge is inconsistent with these facts, we find the trial judge’s factual determination in this regard to be clearly wrong.
The trial judge relies heavily in his reasons for judgment upon the decision of Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962), apparently solely for the purpose of concluding that Crowley’s failure to comply with LSA-R.S. 32:141 and LSA-R.S. 32:368 established negligence on his part which was the sole cause of the accident. We note that in Dixie the supreme court specifically agreed that the driver of the Dixie vehicle, which collided with the stalled truck in the right hand lane of Airline Highway south of Kenner, was guilty of negligence that contributed to the accident because he failed to avoid the accident while driving 45 mph after observing the stalled vehicle on a rainy day a distance of 200 ft. in front of him. The driver of the Dixie vehicle stated he only realized the stalled vehicle with which he collided was stopped when he reached a point 85 ft. from it. The court there stated 137 So.2d at p. 303:
“Nonetheless, the record fully supports the finding of both the district court and the Court of Appeal that the driver of the Dixie truck was negligent in that he ‘ * * * failed to see * * * [the obstructing truck], and failed to realize it was stopped on the highway in time to avoid the collision.’ ”
A motorist on a highway is required to maintain a careful lookout. He is required to see what he should have seen and if he becomes involved in an accident because of his failure to maintain a proper lookout, he is guilty of negligence which contributed to the accident.
In the case of Levy v. Graffagnini, 255 So.2d 422 (La.App. 4th Cir. 1971), the court made the following statement with regard to the law:
“The duty of a motorist to look ahead and observe never ceases and he is held to have seen an object which, by the exercise of ordinary care and prudence, he should have seen in time to avoid a collision with that object; he is under a continuing duty to maintain a proper lookout and always must closely observe preceding traffic.” Id. at 424.
In the case of Boyd v. Damico, 230 So.2d 425 (La.App.3d Cir. 1969), the court stated:
*1241 “It is well settled that a motorist has the duty to discover another vehicle in the road ahead of him if such discovery can be made by the exercise of ordinary and reasonable care. The facts of this case fall within that general rule, and we find that Mrs. Tanner should have observed the stopped car and taken appropriate action to avoid the accident.” Id. at 428.
The pictures in the record, the testimony of the state trooper, and the testimony of Truluck, all establish that had Tru-luck been maintaining a proper lookout he could have stopped his vehicle after he saw the stalled truck and avoided the accident. He was under a duty not only to see the truck, but to observe that it was stopped. Truluck’s failure to maintain such a lookout that he could have observed the truck was stopped when there was no obstruction to his vision constitutes negligence which is one of the causes of the accident, and the trial court’s conclusion that he was free of negligence is clearly wrong.
The judgments appealed from are REVERSED, the demands of each of the plaintiffs in these consolidated cases are rejected, and all costs are assessed against the plaintiffs in the respective actions.

. LSA-R.S. 32:141 — A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.
B. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic.
C. The driver of any vehicle left parked, attended or unattended, on any highway, between sunset and sunrise, shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence.

. LSA-R.S. 32:368 — A. Whenever any freight carrying vehicle, passenger bus, truck tractor, trailer, semi-trailer, or any motor vehicle pulling a house trailer or other vehicle, is disabled upon the traveled portion of any highway of this state, or the shoulder thereof, at any time when the lighted lamps are required on vehicles, the driver of such vehicle shall display the following warning devices upon the highway during the time the vehicle is so disabled on the highway except as provided in Subsection B of this Section:
(1) A lighted fuse, a lighted red electric lantern or a portable red emergency reflector shall be immediately placed at the traffic side of the vehicle in the direction of the nearest approaching traffic.
(2) As soon thereafter as possible, but in any event within the burning period of the fuse (15 minutes), the driver shall place three liquid burning flares (put torches), or three lighted red electric lanterns or three portable red emergency reflectors on the traveled portion of the highway in the following order:
(a) One, approximately 100 feet from the disabled vehicle in the center of the lane occupied *1238 by such vehicle and toward traffic approaching in that lane.
(b) One, approximately 100 feet in the opposite direction from the disabled vehicle and in the center of the traffic lane occupied by such vehicle.
(c) One at the traffic side of the disabled vehicle approximately 10 feet rearward or forward thereof in the direction of the nearest approaching traffic.

D. Whenever any vehicle of a type referred to in this Section is disabled upon the traveled portion of a highway of this state or the shoulder thereof, outside of any municipality, at any time when the display of fuses, flares, red electric lanterns or portable red emergency reflectors is not required, the driver of the vehicle shall display two red flags upon the roadway in the lane of traffic occupied by the disabled vehicle, one at a distance of approximately 100 feet in advance of the vehicle, and one at a distance of approximately 100 feet to the rear of the vehicle.