426 So.2d 1385 (1983)
ILLINOIS CENTRAL GULF RAILROAD COMPANY
v.
CITY OF NEW ORLEANS, Through NEW ORLEANS PUBLIC BELT RAILROAD and Strachan Shipping Company.
No. 12758.
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 1983.
James O.M. Womack, Daniel E. Knowles, III, Burke & Mayer, New Orleans, for Strachan Shipping.
C. William Bradley, Jr., Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, for Illinois Cent. Gulf R. Co.
Samuel O. Buckley, III, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for City of New Orleans Through Public Belt R.R.
Before SCHOTT, AUGUSTINE and LOBRANO, JJ.
*1386 PER CURIAM.
In February of 1977, John Deere Harvester Works tendered a combined harvester-thresher to Illinois Central Gulf Railroad (I.C.) for delivery to a New Orleans consignee. Upon arrival in New Orleans, the shipment was transferred to the switching carrier, New Orleans Public Belt Railroad. During the course of subsequent switching and spotting operations conducted by Public Belt, the combine was damaged when it collided with a trailer parked at Strachan Shipping Company's loading dock at the Napoleon Avenue wharf.
I.C. paid John Deere's damage claim in the amount of $2,467.53 and was thereby subrogated to its rights. I.C. initiated this suit, naming Public Belt and Strachan as defendants and alleging their negligence as the cause of damage to the combine.
Following trial on the merits, the Trial Court awarded I.C. $2,467.53 in stipulated damages against Public Belt and dismissed the principal and third party claims against Strachan. Public Belt now appeals the finding of liability, and, alternatively, argues that if there is any liability on its part, it should be shared by Strachan Shipping Company.
Although there is some dispute as to the circumstances surrounding the accident, we believe the record supports the following findings of fact:
In late January of 1977, John Deere delivered a harvester-thresher combine to the Chicago, Milwaukee, St. Paul, and Pacific Railroad, the origin carrier, at East Moline, Illinois. There, the combine was loaded aboard a railcar and shipped to Linton, Indiana, where the car was taken over by I.C. as delivering carrier on February 12, 1977. Upon arrival at I.C.'s terminal in New Orleans, the railcar containing the combine was transferred to the New Orleans Public Belt Railroad.
The record shows that Public Belt accepted the shipment "without exception", thus creating the strong presumption that the combine was delivered to Public Belt in good condition and that it was properly loaded. That it was in such a condition is supported by the testimony of James N. Vinson, manager of freight claims for I.C., who stated that there were no reports to I.C. of damage to the shipment, nor of improper loading as of the time it was received by Public Belt.
On March 4, 1977, Public Belt began the switching and spotting operation which resulted in damage to the harvester-thresher. It had been Public Belt's intention to transport the combine in a train of cars originating in its yard near the foot of Nashville Avenue and to deliver the shipment to the Napoleon Avenue wharf, approximately one mile away by rail. The course of this movement brought the train past Strachan's loading dock at Napoleon Avenue, where trailer-trucks are often placed in close proximity to the rail for loading and unloading of freight.
Because the purpose of the movement was to unload the combine at its designated place on the wharf for subsequent shipment overseas, the train naturally operated along the rail closest to the wharf. At the point where the rail passed Strachan's facility, a distance of only 8'6" separated the track's center line from the edge of the wharf. According to published clearances, Public Belt claimed this entire distance as its right-of-way.
The combine which is the subject of this suit is a John Deere model No. 6602. If loaded properly, no part of this machine would have extended beyond the edges of the open flatcar upon which it was carried. Regarding the dimensions of the flatcar itself, the record shows that it measured 65 feet in length and 10'6" in width, or 5'3" from centerline to outside edge.
Given these measurements, the flatcar and combine should have cleared the Strachan wharf by at least 3'3". That the combine did not do so is attributable, in part, to the fact that the combine was carried improperly aboard the flatcar.
Mr. Donald Childress, manager of engineering and maintenance for Public Belt, testified that chocks or wedges were placed underneath one side of the combine in order *1387 to tighten the chains which secured it to the railcar.
The placement of these chocks caused the combine to tilt noticeably toward the apron or wharf so that a considerable portion of the machine extended beyond the side edge of the car. Childress' testimony was corroborated by that of Fred Kraus, terminal superintendent for Strachan Shipping Company, who also stated that the combine was leaning toward the dock.
As the line of cars and the leaning combine proceeded along the track toward their destination, none of the Public Belt crewmen manning the train noticed that the tail end of a trailer-truck was protruding from Strachan's loading ramp into the Public Belt right-of-way. At some point in the spotting procedure, the combine sideswiped the overhanging trailer, causing damage to the harvester-thresher in the amount of $2,467.53.
Although the accident went unnoticed by the Public Belt crewmen, it was reported almost immediately by Strachan's employees. It was later verified by Mr. Fred Kraus of Strachan Shipping that the overhanging trailer had invaded Public Belt's right-of-way by at least six inches, and that the trailer had been parked in that location for a full three days prior to the collision.

Liability of Public Belt
Public Belt's liability for damage to the combine which occurred on its own line must be measured according to the standard imposed upon "switching carriers". A switching carrier is not a "delivering carrier" within the meaning of the Carmack Amendment of the Interstate Commerce Act, 49 U.S.C.A. § 20, subdiv. (11)[1], and is therefore not subject to the liability for damage imposed by that statute. Public Belt's liability is determined by the common law of carriage. Louisiana Southern Ry. Co. v. Anderson, Clayton & Co., 191 F.2d 784 (5th Cir.1951).
"At common law a common carrier undertook to carry the shipment safely, and it was liable for all loss of injury excepting only that due to acts of God, public enemy and those arising from the inherent nature of the goods transported or resulting from the fault of the shipper. It was also a rule of common law that as to these excepted causes of damage the carrier could nevertheless be held liable if it were negligent. The carrier was liable for damages whether negligent or not if the loss was not due to the excepted causes. Therefore a carrier could not escape liability by a showing of the absence of negligence on its part. Chesapeake & Ohio Ry. Co. v. Thompson Mfg. Co., 270 U.S. 416, 46 S.Ct. 318, 70 L.Ed. 659 (1925)." L.E. Whitlock Truck Service, Inc., v. Regal Drilling Co., 333 F.2d 488, 491 (1964).
Illinois Central, having already paid damages to John Deere, is fully subrogated to its rights as shipper.
In order to recover for damage by the carrier, the shipper must prove: (1) Receipt of goods by the carrier in good condition; (2) Arrival in damaged condition; and (3) the amount of the loss. Anderson, Clayton, supra.
There is no dispute among the parties that the damages to the combine occurred while in the custody of Public Belt. Accordingly, they are absolutely liable for the damage, unless they carry the burden of proving that the damage was occasioned by one of the excepted causes.
Public Belt asserts that the collision occurred because of the fault of the shipper, that is, that the freight was improperly loaded, causing it to lean beyond the edges of the flatcar.
While we agree with Public Belt that the severe lean of the cargo was a substantial factor in causing the collision, we cannot assign fault in that regard to Illinois Central. *1388 We note, first, that Public Belt accepted the shipment without exception. It is therefore to be presumed that the combine was not improperly loaded aboard the flatcar as of the time it was received by Public Belt.
Furthermore, Mr. Vinson of Illinois Central affirmatively stated that I.C. had nothing to do with the placing of wedges or chocks underneath the harvester-thresher.
But even if we were to assume that Illinois Central was at fault for causing the cargo to lean, this fact would not exculpate Public Belt. Improper loading by the shipper is one of the causes of damage which extinguishes the carrier's liability. However, the carrier has the right to refuse those shipments which appear to be improperly loaded. It follows as a corollary that if the carrier accepts for shipment any freight which ordinary inspection would reveal to be improperly loaded, it is the carrier who must bear the responsibility for damage. Southwestern Sugar & Molasses Company v. Industrial Molasses Corporation, 135 So.2d 481 (La.App. 4th Cir.1961); United States v. Savage Truck Line, Inc., 209 F.2d 442 (4th Cir.1953).
In this regard, we note the testimony of Mr. Childress of Public Belt and Mr. Kraus of Strachan Shipping, wherein both state that after the collision, the lean of the combine was noticeable and apparent. Mr. Kraus added that the lean could not have been caused by the collision itself, because the machine was still tightly secured to the flatcar. We conclude that prior to collision, the combine was leaning in a manner that was readily observable by Public Belt upon ordinary inspection. Accordingly, it is Public Belt which must answer for the damage to the combine.
Furthermore, assuming arguendo fault of the shipper, negligence on the part of the carrier vitiates the shipper's fault. Southwestern Sugar & Molasses, supra; Savage Truck Line, Inc., supra; Thompson Mfg. Co., supra.
A railroad has the duty to use reasonable care to maintain a proper look-out for forseeable obstructions of its right-of-way. Reeves v. Louisiana and Arkansas Railway Company, 282 So.2d 503 (La.1973); Dixie Machine Welding and Metal Works, Inc. v. Illinois Central Railroad Company, 285 So.2d 808 (La.App. 4th Cir.1973). We find this duty especially applicable where, as in the present case, a switching and spotting operation conducted along the New Orleans riverfront in congested quarters with slim clearance between the rail and wharf allowed little room for error. It is because of the existence of this duty and Public Belt's awareness of it that John Riolo, the switchman for the Public Belt crew testified that no movement such as the one in question should ever take place without first positioning a look-out on the lead car.
Public Belt breached its duty by failing to detect the overhanging trailer. Their negligence was a proximate cause of the collision, and therefore renders moot the fault of the shipper, if indeed there was any.
Public Belt contends that they breached no legal duty by failing to avoid collision with the trailer which obstructed its right-of-way, citing Dixie Machine, supra.
We disagree. In Dixie Machine, the railroad was sued for negligent damage to a crane that had been left upon a private spur track in an area used only for switching and storing railroad cars. There were no crossings of the spur tracks, and the property owner had always kept the tracks cleared in the past or had notified the train crew when the track was obstructed. The Court under those circumstances found that I.C. owed no duty to the plaintiff owner of the crane to be on the lookout for the obstruction which the crew had no cause to reasonably anticipate.
In the present case, however, Public Belt itself recognized the risk of performing a spotting operation with such slim clearance between their own movement and other trains or the wharf. It was for this very reason that the positioning of a lookout on the lead car was regarded by the railroad as mandatory. Public Belt cannot now be heard to deny the existence of the duty, nor *1389 is it reasonable to claim as they do that the specific risk which caused the harm (the overhanging trailer) was outside the scope of the duty to maintain a proper lookout.

Liability of Strachan Shipping
Public Belt argues that the invasion of its right-of-way by the overhanging trailer was a cause in fact of the collision and Strachan owed a duty to Public Belt to avoid even the slightest invasion of its right-of-way so that the accident was precisely the kind which the existence of that duty seeks to prevent. However, Reeves v. Louisiana & Arkansas Ry., supra, supports the conclusion that the overhanging trailer cannot be regarded as a legal cause of the accident because it is too remotely associated with it.
In Reeves, a truck driver had parked his truck on a spur track which had been used to service a coking unit on property owned by an oil refinery. The refinery was constructing a new coking unit at some distance from the area where the defendant railroad's trains normally operated. The spur track curved around the new coking unit so that any obstructions on the track behind the unit would not have been visable to those operating the train in that vicinity. The railroad had notice that it was frequently necessary for the construction company's personnel to place trucks and other equipment on the track.
The railroad was found negligent in ramming into plaintiff's truck, which was parked straddling the spur track. The court found plaintiff free of contributory negligence, because "no reasonable person could foresee that parking a truck on this spur track would result in a train running into the truck in utter disregard of the safety of the truck's occupant.... In such cases the technical negligence attributable to parking on the track becomes a passive cause, too remote in point of time or sequence of events to remain viable in legal contemplation. Instead, the subsequent negligent conduct, intervening between the original negligent act and the resulting wrong, is more proximately related to the injury." Reeves, supra, at p. 510.
This trailer had been in the same position for several days before the accident and numerous rail cars had passed without incident including some carrying loads like the one here in question. A look-out should have seen that this particular combine was leaning and that the trailer was encroaching on the right-of-way. This failure to do so constituted the type of intervening negligence conduct found in the Reeves case.
Public Belt's reliance on Dixie Mach. Weld. & M. Wks. Inc. v. Illinois Cent. R. Co., supra, writs refused, 288 So.2d 644, is misplaced. There the court distinguished the case from Reeves on the facts and concluded that the defendant railroad owed no duty to plaintiff (which placed a crane boom across a switch track in the path of cars being pushed by defendant's employees) to be on the lookout for the obstruction which the crew had no cause to reasonably anticipate. When the conduct of Public Belt's employees, vis a vis the conduct of Strachan is put to the same test of reasonableness the conclusion of the trial court holding Public Belt solely liable is correct.
Accordingly, the judgment is affirmed.
AFFIRMED.
AUGUSTINE, J., concurs in part and dissents in part, with written reasons.
AUGUSTINE, Judge, concurring in part and dissenting in part, with written reasons.
Although I am in complete agreement with the majority's opinion regarding the liability of Public Belt, I respectfully dissent from that part of the judgment affirming Strachan's freedom from liability.
Applying the duty-risk analysis announced in Dixie Drive It Yourself System, Inc. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962), there is no question that Strachan was negligent with respect to the damage done to the combine: first, the overhanging trailer was a cause-in-fact of the accident; second, Strachan had a legal duty to avoid obstructing Public Belt's right-of-way, a duty which is all the more *1390 compelling in this case by virtue of a published right-of-way in favor of Public Belt which extended all the way to the edge of Strachan's wharf; and finally, the risk engendered by the overhanging trailer, i.e. the danger of collision by passing freight cars, in precisely the kind which the existence of the aforementioned duty seeks to prevent.
Strachan's negligence can therefore be excused only if Public Belt's negligence can be viewed as an intervening cause. Citing Reeves, supra, the majority holds that it is. I respectfully disagree. Reeves concerned an accident involving the extreme negligence of a train conductor in ramming a vehicle which completely straddled the railroad track, injuring the occupant. Properly holding such negligence to be "unforeseeable", the court did not depart from traditional tort doctrine in finding the railroad's negligence to be an intervening cause, for it is well-established that an originally negligent actor will not be held responsible for those future intervening risks which are not foreseeable. However, as Prosser stated:
The risk created by the defendant may include the intervention of foreseeable negligence of others.
... the standard of reasonable conduct may require the defendant to protect the plaintiff against `that occasional negligence which is one of the ordinary incidents of human life, and therefore to be anticipated'. Prosser, Law of Torts, 4th Edition, 1971, § 44, p. 274.
Prosser's thoughts are codified in the Restatement of Torts, 2d, § 447:
The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superceding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about if ... a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted. (Emphasis added).
Louisiana courts have long recognized the above rule. Thus, it has been held that
"The criterion governing liability is whether the person creating the danger could or should have reasonably foreseen that the accident might occur. If such were the case, then he is liable notwithstanding the intervening cause." Jackson v. Jones, [224 La. 403] 69 So.2d 729 (La.1953). See also Waggenspack v. New Orleans Public Service, Inc., 297 So.2d 733 (La.App. 4th Cir.1974); Miller Car Washes, Inc. v. Crowe, 245 So.2d 485 (La. App. 2d Cir.1971).
In my opinion, Public Belt's negligent failure to detect the obstruction was foreseeable, and therefore distinguishable from the negligence of the railroad operator in Reeves. Even under normal circumstances, Public Belt's rail cars often operated very close to the edge of the riverfront wharves; so close that crewmen were advised of the danger of positioning themselves on the side of a rail car when checking clearances in that area. Moreover, the trailer in this case overhung the wharf by a mere six inches, and was therefore a less perceivableand consequently more riskyobstruction than the vehicle which straddled the track in Reeves. Indeed, it was the very slightness of the trailer's intrusion which magnified the risk of collision. Under those circumstances, it was foreseeable that Public Belt might negligently fail to detect the short overhang. It follows that Public Belt's failure cannot be deemed an "intervening cause" of the collision. I would therefore find both defendants liable for having concurrently caused the harm.
In reaching that conclusion, I note that Reeves, relied upon by the majority, was decided upon two distinct rationales. Insofar as Reeves found the plaintiff's arguable negligence in parking on the track to be superceded by the unforeseeable negligence of the train conductor, the decision is in line with traditional tort law. The second reason given by the Reeves court for refusing to regard the plaintiff's conduct as a cause of the harm was expressed thus: "... his negligence in parking on the spur track was passive, too far removed in point of time from the events leading directly to the collision". Id. at 510. That is pure dicta, and is *1391 almost identical to the language of the Court of Appeal in Dixie Drive It Yourself[1], which was so harshly rejected by the Louisiana Supreme Court:
The thrust of this formulation of law is toward relieving all but the last wrongdoer of liability to an innocent victim in torts involving intervening negligence. This restrictive doctrine finds little support in legal theory. We do not subscribe to this formulation as applied in this case. Dixie Drive It Yourself, 242 La. 471, 137 So.2d 298, 304 (1962).
Thus, aside from the great value of Dixie as the instructional case in duty-risk analysis, that decision has been highly regarded for having put to rest the notion of "passive negligence". See Wex Malone, Ruminations on Dixie Drive It Yourself, 30 La.L. Rev. 363 (1969).
The second rationale announced in Reeves was wholly unnecessary to the decision, which was well-founded on other reasoning. In relying upon such language, today's majority expressly revives the doctrine of "passive negligence" which Dixie so emphatically renounced.
Finally, because I believe that the duty to refrain from obstructing a railway encompasses the risk that a train conductor who is guilty of "ordinary negligence" might thereby fail to avoid a collision, I find the circumstances of this case particularly inappropriate for application of the "intervening cause" doctrine. To hold otherwise is to depreciate a serious duty whose negligent breach is seldom justifiable. I would therefore vote to reverse the finding of no liability as to Strachan.
NOTES
[1] "* * * and provided further, that for the purposes of this paragraph and of paragraph (12) the delivering carrier shall be construed to be the carrier performing the line-haul service nearest to the point of destination and not a carrier performing merely a switching service at the point of destination." 49 U.S.C.A. § 20, subdiv. 11.
[1] "Whatever negligence may have been involved on the part of the driver of the defendant vehicle had become passive and too remote to be a contributing cause of the accident." 128 So.2d 841, 843 (La.App. 4th Cir.1961), rev. 242 La. 471, 137 So.2d 298 (1962).