YELYERTON, Judge.
A mobile home being moved caught fire and burned while in transit, and the mover, Aldon Richard and his son, Danny Joe, d/b/a Danny Richard Mobile Home Movers, cast in judgment for the loss in a suit brought by the owner, Wallace Hornsby, appealed. Damages were stipulated, and the only issue in the trial court was whether the mover or the owner was responsible for the loss. Because no evidence was presented by either side to fix the cause of the fire, the trial judge determined liability in accordance with the rules of burden of proof. Finding that our Civil Code articles dealing with the obligations and liability of carriers govern the burden of proof in the case, and, finding, further, that the trial court was not clearly wrong in his assessment of what was proved and what was not proved, we affirm the judgment.
Some of the facts are undisputed. Hornsby hired the Richards to move his mobile home from Buras on the Gulf of Mexico to Washington, Louisiana, in the central part of the state. The move occurred on November 25, 1980, with Danny Joe Richard driving the moving truck, assisted by Randy Stelly, an employee of the movers. Plaintiff himself was a passenger in the towing vehicle. All parties knew the home had a bent frame toward the rear but the trip was nevertheless undertaken. At a weigh station enroute it was discovered that the frame was bent more, but the trip continued. Some four hours into the move, smoke was seen coming from the rear of the mobile unit. They stopped and used fire extinguishers, unsuccessfully. The home burned up.
Other facts are disputed. The plaintiff, Hornsby, testified that Danny Joe Richard told him it would not harm the mobile home to move it with a bent frame. Hornsby said Richard never told him that he would have to assume the risks of moving the home or that he would have to hold the defendants harmless from liability. He said no one warned him that they should stop the moving of the home. The movers only stopped once, at a weigh station, to check the trailer. At the weigh station the frame was bent a little more, but Danny Joe Richard told him it would not hurt it to keep moving it. No one checked the inside of the trailer at the weigh station. The only reason plaintiff came on the trip was to show the defendants where to move the trailer. After the fire occurred the defendants informed him he could have obtained insurance from them for an extra charge. This was the testimony of the plaintiff.
According to the testimony of Danny Joe Richard, the mobile home was still on blocks when he and Randy Stelly arrived in the towing vehicle at Buras. The plaintiff had disconnected the electricity. They unblocked the trailer and checked the inside, finding nothing wrong internally. On the outside they discovered that the frame was *737 damaged. The supporting structure on the back left of the trailer was bent down and not supporting the back end of the home correctly. He told the plaintiff that this might cause moving problems, and that if he wanted them to move it plaintiff would have to assume full responsibility. During the trip they checked the trailer several times including the inside of the trailer. During the trip the back end was hanging down more and getting considerably worse. At the weigh station he carefully checked the trailer and the frame was not rubbing on the tires. At the weigh station the plaintiff inspected the inside. This was the substance of the testimony of Danny Joe.
Aldon Richard, the owner, was not present at any time during the move. He testified that his son was in charge of the operation and that he had sent his son and Stelly to do the job.
Stelly did not help in resolving the conflicts in the testimony between plaintiff and Danny Joe Richard. He said that when they unblocked the trailer before starting the move, he thought that plaintiff had already disconnected the gas and electricity. He did not check the inside of the trailer but noticed that the frame was bent. He heard Danny Joe ask the plaintiff if he wanted the trailer pulled but he did not hear anything else. The only place they stopped was at the weigh station. The frame was bent worse and the plaintiff told them to continue to pull it. They did not check the inside, only the outside. They never told the plaintiff it was too dangerous to move but merely asked him if he wished them to keep pulling it. The witness, Stelly, perceived no trouble as a result of the bent frame since it was still above the wheel and the ground. He stated that plaintiff had nothing to do with the moving of the trailer.
There was nothing in writing. Before they arrived on the scene the morning of the move, the entire contract between plaintiff and the movers was an oral agreement to move the mobile home from Buras to Washington for $418. The trial judge made a credibility and fact determination that it was not proved that a new and supplementary contract was made after the discovery of the bent frame. Contrary to the contention of the appellant that the plaintiff agreed to hold appellant harmless for any damage that happened, and that plaintiff assumed the risk of the accident, the trial judge made the finding that there was no such agreement, saying that “[a]t the best for defendant, there is a standoff on whether plaintiff assumed responsibility for moving with the bent or damaged frame.”
There was no evidence presented in the case as to what caused the fire. While the bent frame was suspected as having had something to do with the loss (if we properly interpret the reason why it was the subject of so much discussion in the case) there was no evidence at all that it caused, or did not cause, the fire.
Since nothing was really proved, the issue comes down to which party failed to carry his burden of proof.
Because the defendants were in the business of moving mobile homes, by pulling them behind a truck from one location to another, we regard this type of business as included within the definition of a “common carrier by motor vehicles” as that term is defined by LSA-R.S. 45:162(5), which reads:
(5) “Common carrier by motor vehicle” means any person, the essential nature of whose business comprises engaging in, soliciting or accepting persons or property for transportation for hire, charge, or compensation as an employment or holding himself out as so available to the public generally and indiscriminately for such business, whether or not the business is conducted over a regular route, between fixed termini, within a defined area, or upon a regular or irregular schedule. There shall be two main classes of common carriers, “common carriers of commodities over regular routes”, and “common carriers of special commodities over irregular routes”. “Common carriers of special commodities over irregular routes” means any person, *738 as a common carrier, transporting commodities which require special equipment, service or handling over irregular routes and not between fixed termini. All certificates of public convenience and necessary now issued and validly outstanding shall continue in full force and effect until the further orders of the Commission. Any person who, with or without specific contracts, furnishes such transportation to more than five separate shippers of property or more than five passengers shall be, prima facie, held to be a common carrier and the burden shall rest upon him to show by a clear preponderance and to the satisfaction of the Commission that the character of his operations is not that of a common carrier. This paragraph shall not apply to the business of any person conducted mainly within the corporate limits of one incorporated municipality but within a radius of seven miles of the limits of the incorporated municipality but this exemption shall not apply to motor carriers of passengers operating beyond the limits of the parish of their domicile unless the major portion of such carrier’s operations are conducted within the corporate limits of one municipality.
The obligations and liability of carriers are expressed in the following codal provisions:
Art. 2751. Obligations of carriers and watermen
Art. 2751. Carriers and watermen are subject, with respect to the safe keeping and preservation of the things intrusted to them, to the same obligations and duties which are imposed on tavern keepers in the title: Of Deposit and Sequestration.
Art. 2752. Liability for things delivered for shipment
Art. 2752. They are answerable, not only for what they have actually received in their vessel or vehicle, but also for what has been delivered to them at the port or place of deposit, to be placed in the vessel or carriage.
Art. 2754. Liability for loss or damage
Art. 2754. Carriers and waterman [watermen] are liable for the loss or damage of the things intrusted to their care, unless they can prove that such loss or damage has been occasioned by accidental and uncontrollable events.
In any case against a carrier for damage to goods, the claimant must prove (1) receipt by the carrier in good condition; (2) arrival in a damaged condition; and (3) the amount of the loss. Home Furniture and Appliance v. Red Ball Motor Freight, Inc., 343 So.2d 319 (La.App. 2nd Cir.1977), writ denied 345 So.2d 1193 (La.1977); Illinois Central Gulf Railroad Company v. City of New Orleans, New Orleans Public Belt Railroad, 426 So.2d 1385 (La.App. 4th Cir.1983). After the claimant has proved these elements the carrier may escape liability if he proved that such loss or damage was occasioned by accidental or uncontrollable events. LSA-C.C. art. 2754.
This relationship and burden of proof is similar to that of a depositor-depositary relationship. Once a depositor establishes the existence of a deposit and the loss of the property while deposited, it is presumed that the loss resulted from the depositary’s lack of care and the depositary has the burden to exonerate himself from fault. Harper v. Brown & Root, Inc., 391 So.2d 1170 (La.1980).
In the present case the defendants’ employees received the mobile home for shipment in good condition. Although the frame was bent, the trial court found that there was no evidence that this damage caused the fire. In transit the mobile home caught fire and was totally damaged. The value of the trailer was stipulated at $5,000. It is clear from the evidence that plaintiff sustained his burden of proof. The defendants made no showing that the accident was not occasioned by their neglect, and offered no evidence of the cause of the fire. Further, the defendants failed to prove that the damage or loss had been occasioned by accidental or uncontrollable *739 events. Therefore, the trial court properly found the defendants liable for the damage occasioned by the unexplained fire while the mobile home was in transit.
Such a conclusion is not unfair since the defendants are the experts in the moving of mobile homes and are in a much better position to know of the hazards of the occupation and to guard against them. When damage or loss occurs to the transported goods the mover is in a better position to explain the occurrence.
The defendants also argue that they should escape liability since the plaintiff agreed to hold the defendants harmless for any damage. We disagree.
The trial court was correct when he stated in his reasons for judgment that “[a]t best for defendant, there is a standoff on whether plaintiff assumed responsibility for moving with the bent or damaged frame. Even if there was a loss-assumption agreement, it would not extend to the fire damage. It was not shown to be attributable to the bent or damaged frame.”
As we interpret the trial court’s reasons, which are supported by the evidence, the defendants failed to prove by a preponderance of the evidence that there was a loss-assumption or hold harmless agreement between the parties. The plaintiff testified that he never agreed to assume the responsibility for the moving of the trailer and that the defendants never warned him of the dangers in moving it. The defendants’ employee, Randy Stelly, also did not hear the conversation allegedly made by the plaintiff assuming responsibility.
The evidence also supports the finding that the plaintiff’s presence in the moving vehicle did not affect the defendant’s obligations as a carrier, as plaintiff had no control over the moving operation.
For these reasons, the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.