LABORDE, Judge.
This action arises out of a collision between a truck driven by plaintiff, Kerry Jones, and a train owned by defendant, Missouri Pacific Railroad Company (Mo-Pac). Plaintiff filed suit for damages against MoPac and Union Pacific Insurance Company, the plaintiffs uninsured motorist insurance carrier. Union Pacific was subsequently dismissed with prejudice from the suit. After a trial on the merits, the trial court found the defendant to be 60% at fault and the plaintiff to be 40% at fault for the occurrence of the accident. Accordingly, plaintiffs recovery was reduced by 40%. Defendant now lodges this appeal. We affirm.
FACTS
Plaintiff in this action is Kerry Jones, a resident of Lake Charles, Louisiana and a professional truck driver with nine years of long distance driving experience. On June 21, 1984, Jones was transporting himself and several passengers from Oakdale to Lake Charles in his Peterbilt truck. They were traveling south on U.S. Highway 165, when, at approximately 11:55 p.m., the truck collided with" a train owned by MoPac at the railroad’s intersection with U.S. 165 in Kinder. The truck ran headlong into a black tank car which was stopped on the tracks, blocking the intersection. As a result of the accident, the truck was totally destroyed and Jones sustained serious personal injuries.
PRELIMINARY ISSUES
In its opinion, the trial court decided three preliminary procedural and evi-dentiary issues which were taken under advisement at the time of trial. We find these rulings to be correct; furthermore, we adopt the trial court’s written reasons for these rulings:
“The plaintiff objected to the introduction of a taped interview of Oscar Ray Ryder [sic], one of plaintiff’s witnesses, used to impeach his testimony. The basis for the objection was that Oscar Ray Ryder [sic] had requested a copy of his statement but none was ever furnished him. LSA-R.S. 13:3732 requires the furnishing to an “injured person” with a copy of his statement upon request or the statement cannot be admitted in any civil proceeding. Plaintiff alleges that this should include statement of witnesses and cited Rule 26 of the Federal Rules of Civil Procedure which provides any witness can secure a copy of his statement and can apply to the Court for an order. The Court has decided to refer the plaintiff’s objections to the weight of the evidence and allow its admission. However, the refusal to furnish a copy of the statement after request does seem highly unusual to the Court.
The second ruling of the Court was to the admission of the deposition of Curtis Manning. Manning was one of the passengers in the Jones truck and was sub-poened by the plaintiff. He failed to appear and the Court allowed his deposition into evidence in lieu of his testimony. Defendant argued that he was not properly subpoened and therefore his deposi *634 tion should not have been allowed. However the Court is satisfied that under the provisions of La. Code of Civil Procedure, Article 1450, the Court may allow the deposition to be used in its discretion and has admitted the deposition into evidence.
The next issue was the objection to testimony of prior and subject [sic] functional failure of the railroad signal lights to work. The Court allowed the testimony of malfunctioning for a short time before the accident and a short period of time after the accident. This was considered as rebuttal evidence in view of the testimony of Clyde Welch the Missouri Pacific Railroad signal repairman that it was impossible for the signal lights to malfunction and at the very most only a bulb could burn out. In line with the law review Article (46 ALR 2d 935) the Court feels that it can limit this testimony and that it is admissible solely for impeachment purposes.”
LIABILITY UNDER ARTICLE 2317 OF THE CIVIL CODE
The main issue on appeal concerns the operation of the signal lights at the railroad crossing. Plaintiff contends that the flashing light signals at the crossing on U.S. 165 were not working at the time he approached the crossing, and that this malfunction caused him to run into the train. He urges that MoPac, as custodian of the cantilevered flashing light signals, should be held strictly liable under Article 2317 and 2322 of the Louisiana Civil Code for any injuries caused by their malfunction. After consideration of the evidence, the trial court determined that the signal lights did malfunction shortly before and at the time of the collision, and, as such, the defendant was strictly liable under Articles 2317 and 2322. The defendant argues that this decision is manifestly erroneous, as it is contrary to the weight of the evidence.
We disagree and find Article 2317 to be applicable to this situation.[1]
Article 2317 appears in the section of the Civil Code governing delictual liability. It provides:
“Art. 2317. We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.”
It is well-established in our jurisprudence that to recover under Article 2317 for damage caused by things, a plaintiff must show: (1) that the thing which caused the injury was in the care and custody of the defendant owner; (2) that a vice or defect existed in the thing; (3) that the vice or defect caused the injury. A vice or defect is defined as the creation of an unreasonable risk of injury to another. Loescher v. Parr, 324 So.2d 441 (La.1975); Kaplan v. Missouri-Pacific Railroad Co., 409 So.2d 298 (La.App. 3d Cir.1981).
Regarding the first prong in the Loescher three prong test, it is undisputed that MoPac had the care and custody of the defective light signals. In support of this finding, we cite Kaplan, supra, where this court held that a railroad track, bridge and right-of-way were all “things” in the care and custody of the railroad.[2]
Having determined that the first prong of Loescher has been met, we now turn our attention to the more contentious issue of whether or not the signal lights were defective at the time of the accident. At the trial there was copious testimony from both sides on this issue. The plaintiff’s principle witness, Oscar Ray Rider, testified that he arrived at the crossing several minutes before the accident. As the train blocked the intersection, Mr. Rider stopped his car and got out to stretch his legs. He testified that at that time he noticed that *635 the signal lights were not working. He further stated that he witnessed the accident, and that when he asked another individual, who he assumed to be in the employee of the railroad, why the lights were not working, that person offered no response. The defendant attempted to impeach Rider’s testimony by introducing, over the plaintiff’s objection, a statement made by Rider to William D. McLendon, the claims representative for the defendant, on the morning after the accident. In the statement, Rider relates that the signal lights were operating shortly before and at the time of the collision. This would seem to be a direct contradiction of his trial testimony. However, when confronted with the statement at trial, the witness indicated that he was confused as to exactly which set of tracks (there are two sets of tracks in close proximity to each other) the claims representative was referring to during the interview. The witness testified that what he really meant was that the signal lights on the track which the train occupied were not working.
Another witness for the plaintiff, Thomas Whatley, testified that he reached the south side of the Kinder crossing at about 11:20 p.m., and that the train was blocking the intersection at that time. He also stated that the signal lights were not working when he approached the track. Notwithstanding Whatley’s testimony to the contrary, the defendant points out in its brief that the train did not reach the Kinder crossing until 11:55 p.m., and therefore, it was impossible for Whatley to have observed the train at 11:20 p.m. We note that Whatley was uncertain of the time and could only guess that it was around 11:20 p.m. when he arrived at the crossing.
Plaintiff, testifying on his own behalf, related that although the circumstances surrounding the accident were somewhat hazy, he did not remember the signal lights flashing before his collision with the train.
In opposition to the plaintiff’s case, the defendant offered several witnesses who testified that the signal lights were operating properly on the night of the accident. The defendant’s chief witness, Deputy Sheriff Terry Reeves, stated that he first noticed the plaintiff’s truck when it passed in front of him on U.S. 165 “at a high rate of speed,” heading directly for the railroad crossing. Reeves testified that he witnessed the collision and at all times, the signal lights were flashing. Plaintiff attempted to impeach Reeves’ testimony by highlighting inaccuracies in his trial testimony. Reeves stated that the tank car the plaintiff collided with was colored white, whereas every other witness testified that the car was black in color. Plaintiff contends that this inaccuracy casts serious doubt on this witness’s ability to recall the events that occurred on the night of the accident.
Sergeant Mark Kelly of the Kinder Police Department could not recall if the lights were flashing when he first reached the scene, a few minutes after the crash, but was certain they were flashing after he had removed all the passengers from the plaintiff’s truck.
The defendant also produced three employees of MoPac, who were riding on the train at the time of the collision. With varying degrees of certainty, they all testified that the lights were flashing before the train reached the intersection. The plaintiff in his brief, emphasizes the fact that not one of these employees could be sure that the light signals were working immediately prior to the accident.
Clyde Welch, the signal maintainer, also appeared on behalf of the defendant. He testified that he arrived at the scene at about 12:30 a.m. He checked all the signal lights at the U.S. 165 crossing, finding them all to be in good working order. Mr. Welch also expressed his opinion that it is nearly impossible for signal lights to all malfunction at the same time, and that the only way this could occur is if all the wires to the lights were removed or if all power was cut off to them. The plaintiff, over the objection of the defendant, offered two rebuttal witnesses to impeach Mr. Welch’s testimony concerning the unlikelihood of malfunction. Both testified that they visited the accident scene a week after the accident, and while there, they witnessed a *636 train proceeding through the intersection, yet no signal lights were flashing.
After hearing all of the testimony, and weighing the credibility of the witnesses for each side, the trial court determined that the testimony of the plaintiffs witnesses was more convincing than that of the defendant’s. Thus, the trial court concluded that the signal lights did malfunction before and at the time of the accident. The defendant finds error in this factual determination. We disagree. The trial court’s factual conclusions, particularly when the credibility of witnesses is involved, will not be disturbed on appeal unless clearly wrong. Bridges v. Reliance Insurance Co., 410 So.2d 1243 (La.App. 3d Cir.1982). Such a standard exists because the trial judge is able to observe the demeanor of the witnesses and the many things that transpire in a courtroom which are not susceptible of being taken down by a stenographer. Fouquier v. Fouquier, 231 La. 430, 91 So.2d 591 (La.1956). With this in mind, we hold that the trial court did not err in its determination that the plaintiff proved by a preponderance of the evidence that the signal lights did malfunction before and at the time of the accident.
The final prong of the Loescher test involves the question of causation. In order to hold the defendant liable under Article 2317, the plaintiff must prove that the defect in the thing was a cause in fact of the injury sustained. South Central Bell Telephone Co. v. Hartford Accident & Indemnity Co., 385 So.2d 830 (La.App. 1st Cir.), writ denied, 386 So.2d 356 (La.1980). It need not be the sole cause, but it must be a substantial factor in bringing about the harm. Lombard v. Sewerage & Water Board of New Orleans, 284 So.2d 905 (La. 1973). We have no difficulty in determining that the malfunctioning signal lights were a substantial factor in the cause of the accident. The accident occurred at a railroad crossing in rural Louisiana. The crossing itself was described by several witnesses as being very dark. We find that in such a situation, these signal lights are an integral part of a railroad’s warning system. Without them, the driver is at a serious disadvantage in apprehending whether á train is on the tracks or not. For these same reasons, we also find that the malfunction of the signal lights created an unreasonable risk of harm to the plaintiff.
Since the Loescher three prong test has been met, we hold that MoPac is liable under Article 2317 for the plaintiff’s injuries.
COMPARATIVE FAULT
The trial court assigned 60% fault to the defendant and 40% fault to the plaintiff. The defendant would have us increase the percentage of fault attributable to the plaintiff. We do not agree with this proposal and decide to uphold the finding of the trial court.
We recognize that comparative fault principles are applicable to strict liability actions, including those coming under Article 2317 of the Civil Code. Harper v. State Farm Mutual Automobile Insurance Co., 484 So.2d 737 (La.App. 1st Cir.), writ denied, 489 So.2d 246 (La.1986); LaJaunie v. Metropolitan Property & Liability Insurance Co., 481 So.2d 1357 (La. App. 1st Cir.1985). In the instant case we find that plaintiff’s negligence contributed to his injuries and his award should be reduced accordingly. The plaintiff testified that he had three to four beers the night of the accident. He acknowledged that his blood alcohol reading, taken at 2:00 a.m. the morning of the accident, was .09. There was also testimony by Deputy Reeves that the plaintiff was exceeding the speed limit at the time of the accident. The skid marks measuring 183 feet and the almost total destruction of the truck only serve as confirmation of this fact. Consequently, we determine that plaintiff’s failure to avoid the collision constituted negligence on his part which was a factor in bringing about the injuries he sustained.
Having decided that the plaintiff was negligent, we must now apportion fault between the parties. In determining the percentage of fault, both the nature of the conduct of each party at fault and the extent of the causal relationship between *637 the conduct and the damages claimed must be considered. Veazey v. Parish of Avoyelles, 476 So.2d 1057 (La.App. 3d Cir.), writs denied, 478 So.2d 1236, 1238 (La. 1985). We also recognize that the findings of the trier of fact as to the percentage of fault are factual findings and should not be disturbed in the absence of clear and manifest error. McCoog v. Roberts, 488 So.2d 310 (La.App. 3d Cir.), writ denied, 493 So.2d 637 (La.1986); Triangle Trucking Co. v. Alexander, 451 So.2d 638 (La.App. 3d Cir.1984). After a careful review of the record, we can find no manifest error in the trial court’s apportionment of fault. Thereby, we find the defendant to be 60% at fault and the plaintiff to be 40% at fault for the occurrence of the collision.
THE DAMAGE AWARD
The defendant contends that the trial court erred in fixing the plaintiff’s loss of future earnings at $399,600.00,[3] and, more specifically, in failing to reduce that value to its present day lump sum value. The defendant would have us apply a government bond rate to determine what would be fair compensation for the loss of future earnings. While the defendant has presented an interesting formula for calculating the loss of future earnings, we can not say that it is any more right or equitable than the method utilized by the trial court. We note that there is no single method for calculating the loss of future earnings; it is a speculative figure and the trial court is accorded great discretion in making an award. Freeman v. Harold Dickey Transport, Inc., 467 So.2d 194 (La. App. 3d Cir.1985); Merrell v. State, Through Department of Transportation and Development, 415 So.2d 660 (La.App. 3d Cir.1982), writ denied, 420 So.2d 443 (La.1982). The primary consideration of the trial court in making the award should be fairness to both litigants. Freeman, supra. In arriving at the figure the trial court took into consideration the age of the plaintiff, his work life expectancy, his disabilities, and his probable future earning capacity. The trial court was quite correct in using these factors, and we find its total damage award of $500,000.00, which includes an amount for loss of future earnings, not to be an abuse of . discretion.
DECREE
For the foregoing reasons, we affirm the decision of the trial court. All costs of this appeal are assessed against the defendant.
AFFIRMED.
DOMENGEAUX, J., concurs.

. Since we find Article 2317 to be applicable to this case, we pretermit any discussion of liability under Article 2322. For the same reason, we find it unnecessary to address the issue of the defendant’s negligence.

. In Kaplan, the plaintiffs were denied recovery under Article 2317 on the grounds that they failed to prove a vice or defect in the track, bridge or right-of-way.

. We can find no indication that the trial court "fixed” the loss of future earnings at $399,-600.00. In its opinion, the trial court merely states that the plaintiffs net earnings over his projected lifetime would amount to that figure. We believe that this figure was one of the factors the trial court used in arriving at an amount for the loss of future earnings.