631 So.2d 735 (1994)
Betty TUCKER, Plaintiff-Appellee,
v.
Ozro P. PINDER, Inez Pinder, Champion Insurance Co., The State of Louisiana, through the Department of Transportation and Development, Calcasieu Parish Police Jury, Louisiana Insurance Guaranty Assoc., and State Farm Insurance Company, Defendants-Appellants.
No. 93-563.
Court of Appeal of Louisiana, Third Circuit.
February 2, 1994.
*736 Terry Jay Johnson, Helton Gayle Marshall, Lake Charles, for Betty Tucker.
Rick J. Norman, Lake Charles, Thomas Augustus Warner, III, Baton Rouge, for State of Louisiana, DOTD
Michael Steven Beverung, Lake Charles, for Calcasieu Parish Sheriff, Wayne F. McElveen.
Robert Samuel Dampf, Lake Charles, H.O. Lestage, III, De Ridder, for State Farm Mut. Auto. Ins.
Gernine Mary Mailhes, Lake Charles, for Calcasieu Parish Police Jury.
A.R. Johnson IV, Lake Charles, for Louisiana Ins. Guar. Ass'n.
Before DOUCET, KNOLL and CULPEPPER[*], JJ.
DOUCET, Judge.
In this consolidated matter, the defendants appeal a judgment finding them at fault in an intersectional collision.
On December 2, 1988, at about 9:30 p.m., James H. Tucker was driving his car in a westerly direction on Louisiana Highway 12 near its intersection with Green-Moore Road near Starks in Calcasieu Parish. His wife, Betty, was a passenger in the car. At the same time, Inez Pinder was driving north on Green-Moore Road in a pickup truck registered to her husband, Ozro. The stop sign controlling the intersection was bent over or knocked down. Mrs. Pinder failed to stop. She entered the intersection and was hit by the Tucker vehicle. The two vehicles collided with a truck parked on the north side of the intersection and occupied by Mikel West and Cheryl Parish. Mr. and Mrs. Tucker, Mr. West, and Desta Gaye Robinson (a passenger in the Pinder vehicle), each filed a separate suit against the Pinders, the State of Louisiana, Department of Transportation and Development (DOTD), and the Calcasieu Parish Sheriff's Office (Sheriff), among others. The Pinders settled with all the plaintiffs prior to trial.
The suits by the Tuckers were tried on April 15, 1992. The trial court rendered judgment awarding $300,000 to Mrs. Tucker *737 and $20,000 to Mr. Tucker, apportioning fault 15% to Inez Pinder, 50% to the DOTD, and 35% to the Parish. The Sheriff and the DOTD appeal.

LIABILITY OF THE DOTD
In their pleadings the plaintiffs allege that the DOTD, as custodian of the sign, is strictly liable under La.C.C. Art. 2317.
[T]o recover under Article 2317 for damage caused by things, a plaintiff must show: (1) that the thing which caused the injury was in the care and custody of the defendant owner; (2) that a vice or defect existed in the thing; (3) that the vice or defect caused the injury. A vice or defect is defined as the creation of an unreasonable risk of injury to another. Loescher v. Parr, 324 So.2d 441 (La.1975); Kaplan v. Missouri-Pacific Railroad Co., 409 So.2d 298 (La.App. 3d Cir.1981).
Jones v. Missouri Pacific R. Co., 546 So.2d 632, 634 (La.App. 3 Cir.1989).
La.R.S. 9:2800 adds the further requirement, where damages are sought from a public entity, of showing that:
... the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
Regarding the first prong of the Loescher test, the evidence amply shows, and the DOTD does not dispute, that it had care and custody of the sign.
Next, it must be determined whether the sign was defective at the time of the accident. At trial there was evidence that the sign was in almost every imaginable position; normal upright position, laying flat on the ground, bent over at an angle but facing traffic, bent over at an angle facing the sky, bent over at an angle facing the ground, and the face of the sign torn in two or folded over itself. Faced with this conflicting evidence, we cannot say that the trial judge, upon his reasonable credibility evaluation, was manifestly erroneous in concluding that the sign was not visible to Mrs. Pinder as she approached the intersection and was, therefore, defective.
The next question to be answered is whether the DOTD had actual or constructive notice of the damage to the sign. The trial judge concluded that the DOTD had notice through an employee. A review of the record reveals that, on the date of the accident, Sergeant Nellie Charmaine Raleigh, a police officer with the Weights and Standards Division of the DOTD, was working at the scales on Highway 12 near its intersection with Green-Moore Road. At about 1:45 p.m., while on her way to work, she passed the intersection and noticed the damaged stop sign. When she arrived at work, she reported the sign to her supervisor, Lt. Spell, and to Darrel Flanagan, a Calcasieu Parish Sheriff's Deputy, who was visiting the scales. Deputy Flanagan told them the sign had already been reported. Weights and Standards is unconnected with the division of the DOTD which is responsible for roadway maintenance. Neither Officer Raleigh nor her supervisor reported it to the proper division. The records of the DOTD reflect that no official notification was made. Even if this was enough notice to put the DOTD on constructive notice of the defect, we cannot say that they had a reasonable opportunity to correct the situation. Less than eight hours passed from the time Officer Raleigh noticed the sign until the accident occurred.
Therefore, the trial judge erred in holding the DOTD liable in connection with the accident.
LIABILITY OF THE SHERIFF
When a law enforcement officer becomes aware of a dangerous traffic situation, he has the affirmative duty to see that motorists are not subjected to unreasonable risks of harm. Duvernay v. State, Dept. of Public Safety, 433 So.2d 254 (La.App. 1st Cir.1983), writ denied, 440 So.2d 150 (La. 1983).
Monceaux v. Jennings Rice Driver, Inc., 590 So.2d 672, 675 (La.App. 3 Cir.1991).
The damaged stop sign at the intersection of a busy highway and a rural street posed a dangerous traffic situation which *738 subjected motorists to an unreasonable risk of harm. The testimony of Deputy Flanagan reveals that he had been aware of a problem with the sign for about two days and had neither reported it nor taken action to correct the situation. As a result, he breached his duty to the traveling public.
The Sheriff argues, however, that the accident resulted solely from the negligence of Mrs. Pinder in failing to stop at the intersection. The trial judge found that while Mrs. Pinder was negligent, the Sheriff's Office was also negligent in its acts or omissions with regard to the sign. The Sheriff would have us believe that an accident may have only one cause-in-fact. This is not so.
"An act of omission is considered to be a cause-in-fact of harm to another if it was a `substantial factor' in bringing about the accident. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970); LeJeune v. Allstate Ins. Co., 365 So.2d 471 (La.1978). Restatement of Torts 2d, Sections 431-33 (1965). As noted in the restatement, factors which may be considered in determining whether the actor's negligence is a substantial factor include `whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm ...'
The `substantial factor' test is akin to the `but for' test (i.e. the accident would not have happened but for the defendant's negligence), except that where more than one party's negligence would have caused the accident absent the other party's negligence, Dixie, supra, and LeJeune, supra, hold both to be causative.

As succinctly stated by the Louisiana Supreme Court in LeJeune, supra:
`As Prosser [on Torts, Section 41 at pp. 237-38 (4th Ed.1971)] notes, the "but for" test (that the accident would not have happened but for the defendant's negligence), while it explains the greater number of cases, does not serve as an adequate test for the present situation: `If two causes occur to bring about an event, and either one of them, operating alone, would have been sufficient to cause the identical result, some other test is needed ...' In such cases it is quite clear that each cause has in fact played so important a role in producing the result that responsibility should be imposed upon it; and it is equally clear that neither can be absolved from that responsibility upon the ground that the identical harm would have occurred without it, or there would be no liability at all. Id., p. 239.'"

Trahan v. State, Department of Transportation and Development, 536 So.2d 1269, 1272 (La.App. 3rd Cir.1988), writ denied, 541 So.2d 854 (La.1989).
(emphasis added)
The accident might have occurred even had Deputy Flanagan taken action to correct the situation. However, it is also true that the accident might not have happened but for the combined negligence of Mrs. Pinder and Deputy Flanagan.
"The mere possibility that the accident would have occurred despite the required precautions does not break the chain of causation."

Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298, 304 (1962).
The Sheriff's acts or omissions were a causein-fact of the accident. Further, the Sheriff breached a duty owed to protect this plaintiff from this type of harm. As a result, the trial judge correctly found the Sheriff liable.

APPORTIONMENT OF FAULT
La.C.C. 2323 provides that:
"When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss." *739 This court in Ledbetter v. State, Dept. of Transp. & Dev., 482 So.2d 1035, 1038 (La. App. 3rd Cir.1986), affirmed 502 So.2d 1383 (La.1987), stated that:
In a case where the fault of a motorist and the fault of a governing body responsible for warning travelers against unusually dangerous road hazards combine to produce an accident, comparative negligence is applicable. C.C. art. 2323; Veazey v. Parish of Avoyelles, 476 So.2d 1057 (La. App. 3rd Cir.1985).
Our Supreme Court, in the case of Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, at 974 (La. 1985), gave us guidelines to assist in the determination of percentages of fault.
"in assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including, (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties."
Monceaux, supra at 675-676.
The findings of the trier of fact as to percentages of fault are factual findings and should not be disturbed absent manifest error. Jones v. Missouri Pacific R. Co., supra. After reviewing the record, we believe the trial judge erred in apportioning only 25% of the fault to Mrs. Pinder. Although the road was dark, she had driven it before. She was aware that the intersection existed and intended to turn there. On the other hand, she did not travel Green-Moore Road often enough to be truly familiar with it. Had the stop sign been visible, she might have been able to avoid the accident. Considering the facts in light of the Watson guidelines, we find that fault lies equally with Mrs. Pinder and the Sheriff. Accordingly, we believe that fault should properly be apportioned 50% to Pinder, and 50% to the Sheriff.

QUANTUM
Finally, the Sheriff argues that excessive awards of damages were made to Mr. and Mrs. Tucker. Mr. and Mrs. Tucker argue that inadequate awards were made.
"Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive." Reck v. Stevens, 373 So.2d 498, 501 (La.1979).
The trial judge outlined in his reasons for judgment the evidence upon which he based his award of damages.
The record reflects that Mrs. Tucker suffered a crushed left leg and fractured sternum, as well as multiple bruises due to this accident. She has been operated on at least three (3) times since the date of this accident and has had severe pain immediately following the accident, and constant pain and discomfort from the date of the accident on December 2, 1988 through May of 1991. Furthermore, through the date of trial, Mrs. Tucker still suffers from a limited disability of not being able to stand, walk or sit for long periods of time. The medical that was necessary for the correction of the injuries sustained by Mrs. Tucker due to this accident amount to Fifty-Six Thousand Thirteen Dollars and twenty cents ($56,013.20). Furthermore she stayed off work for five and one-half weeks and her loss wages were One Thousand and Thirty-One ($1,031.00) Dollars. A special ramp had to be built in her house at a cost of $1,014.88 for the wheel chair she had to use in order to get around immediately after this accident. Mrs. Tucker further claims future wage loss but the court finds no future wage loss should be awarded in this matter. It should be noted *740 that Mrs. Tucker had to wear a leg brace as well as get around in a wheel chair during periods of her disability after the accident. The court is convinced that she is never completely free of pain and that her sex life is not the same as it was prior to the accident, due to the pain she has to endure because of the accident. Therefore the court finds in favor of the petitioner, Mrs. Tucker, and against the defendants in accordance to their proportionate share of responsibility in the amount of Three Hundred Thousand and no/100 ($300,000.00) Dollars. This award reflects all the specials that were set forth in this opinion as well as loss of consortium that she suffered due to this accident.
Mr. Tucker also suffered damages due to this accident. His head struck the door and his knees and legs were bruised. Furthermore he missed five weeks of work on crutches and lost Two Thousand Nine Hundred Sixty-Six and 75 ($2,966.75) Dollars in wages due to this loss of work. The record further reflects that he had headaches for two weeks and incurred medical bills in the amount of Twelve Hundred Ninety-Six and 17 cents ($1,096.17) [sic] Dollars. The record further reflects that Mr. Tucker suffered a loss of consortium with his wife, both in a sexual nature and in a helpmate nature based upon evidence submitted at trial. After taking all these matters into consideration, the court finds that an award of Twenty Thousand and no/100 ($20,000.00) Dollars to Mr. Tucker is fair based upon his injuries and his loss of consortium.
Given the circumstances of this case, we cannot say that the awards are either excessive or inadequate.

CONCLUSION
The judgment of the trial court against the DOTD is reversed.
The judgment against the Sheriff is amended to reflect that fault for the accident is apportioned 50% to the Sheriff and 50% to Inez Pinder. In all other respects, the judgment is affirmed. Costs of this appeal are to be divided equally between the Sheriff and the Tuckers.
AFFIRMED IN PART; AMENDED IN PART; AND REVERSED IN PART.
NOTES
[*] Honorable William A. Culpepper participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.